Gaines, Associate Justice.
It would subserve no useful purpose to discuss the numerous assignments of error found in the record in this case. We shall therefore consider only such .points raised by the brief of appellants as we deem necessary to a disposition of the case in this court and in the district court upon another trial.
We find no error in the action of the court in admitting in evidence the testimony of Darius Lynch as to the decree of divorce in the case of Nancy Patterson v. Edward Patterson, Tendered in the circuit court of Lawrence county, Alabama. *605 The witness deposes that he had examined the records of that court of which J. M. Doss, clerk, was custodian, and that he found that “the following decree was rendered,” and thereupon follows what purports to be a copy of a decree. We understand the witness to testify in substance, that the copy set forth in his answers is a copy verified by him by his own personal examination. Such we take to be the effect of his language, and if so, it was admissible as an examined copy according to the rules laid down by leading text writers and in authoritative decisions of the courts. (1 Greenleaf’s Evidence, sec. 508; 1 Wharton’s Evidence, sec. 94; Rolf v. Dart, 2 Taunt., 52; Hill v. Packard, 5 Wend., 387; Lynde v. Judd, 3 Day, 499.)
We are also of opinion that the act of the Legislature of Alabama giving effect to this decree, was properly admitted in evidence, The main objection to its introduction seems to be that the certificate of the Secretary of State, who attests the copy, states that it is “an exact transcript of an act of the General Assembly, approved February 1, 1839, as the same appears on page one hundred and eighty of the official published acts of that year now in my office.” The copy and certificate are authenticated by the signature of the officer and the great seal of the State. There can be no doubt that this would have been sufficient if it had purported to be a copy of the original bill; and our statute makes the printed statute book of any State, which purports to have been published by authority, evidence in the courts of this State. (Rev. Stats., article 2250.)
Besides, it is held by some courts that, without the aid of any statutory enactment, the official publication of the acts of the Legislature of another State should be received in evidence. (1 Wharton on Evidence, section 289, and authorities there cited.)
It is also provided by article 2251 of our Revised Statutes that a certified copy "of any act from the printed statute book of another State on file in the office of the Secretary of State of one State shall be received, in evidence thereof. Row a copy of the act under the great seal of the State of Alabama, would have been competent proof, although the attestation had not shown whence the copy was taken; and the published acts themselves, as well as certified copy thereof by our own Secretary of State, were admissible in evidence. Therefore, we fail to see any good reason why the copy certified by the Secretary of State of Alabama is not good merely because his certificate *606 shows that it is taken from the official published acts deposited in his office, and not from the original bill as enrolled and signed.
We think, however, the court erred in admitting in evidence Ithe several deeds of W. J. Hamlett, J. A. Hotchcoch and T. J. Layton to M. C. Cummings. Each of these deeds purports to be proved by a certificate of a subscribing witness. The clerk who took the proof seems to have copied literally the form laid down in the statute (Rev. Stats., art. 4316); so that he certified, in effect, that the witness stated on oath that he saw the grantor subscribe the instrument, or stated that the grantor acknowledged in his presence that he executed the same, etc. This will not do. The certificate leaves it doubtful which of the two statements were made by the witness under oath. Either would have been sufficient; but the certificate of proof should have been absolute as to the one or the other, and not in the alternative. (See Monroe v. Arledge, 23 Texas, 480.) We think, therefore, that the authentication was insufficient', and that the deeds should have been excluded.
The court did not err in excluding the deposition of the witness Phil Claiborne. The deposition shows that the alleged transfer of the certificate from Brook§ and wife to Barziza was in writing, and was still in existence. The written conveyance was the best evidence of the transaction, and it was not error to exclude the parol testimony of the witness concerning it.
We think, however, there was error in the charge of the court, and, in order to make this clear, it will be necessary to state briefly some of the facts of the case. The plaintiffs, who are appellants here, sued to recover a tract of land located by virtue of a certificate granted to Edward Patterson, as the head of a family, about the year 1838. Edward Patterson married in Lawrence county, Alabama, Nancy Jennings, who was a widow, and who had one child, then living, by her deceased husband. That child was A. J. Jennings, who is one of the plaintiffs in this suit. Edward Patterson came to Texas and participated in the War of Independence. His wife did not accompany him, but remained in Alabama, where she obtained a decree of a divorce from him, which was perfected by an act of the Legislature of that State in 1839. It is to be presumed, from the language of the act, that the law then required both the decree of a court and the Legislative sanction. The certificate issued to Patterson in 1838. He married a second wife, named Alethea, in the fall of 1840, and *607 died in 1841. Haney Patterson had one child by Edward Patterson, who died about 1846. His name was William E. Patterson. She married again about 1841, and left, as the issue of that marriage, Sallie J. Harvey, wife of Henry F. Harvey, who are the other two plaintiffs in this suit. Unless Haney Patterson was divested of her right to the certificate by the decree of divorce, it is evident that she was entitled to one-halt" of the certificate. There is no proof on the record that Edward Patterson ever claimed to have any other wife until his second marriage, in 1840, long after the certificate issued. The certificate being personal property, under the fourth section of the act of January 20, 1840, his half of it became the community property of himself and his second wife upon his marriage to her. (Hartley’s Digest, 2410; 1 Paschal’s Digest, 776, note 1048; Porter v. Parker, 22 Texas, 699.)
The decree of divorce contained this provision: “It is further decreed and adjudged that all the property that the said Haney brought to her said husband, Edward Patterson, by the marriage be vested in her as her estate and separate estate;” and it seems to have been contended in the court below that the effect of this was to divest the divorced wife of her interest in the certificate. But we do not so regard it. The decree refers to no property except that brought by her into the marriage, and we have no right to infer that her rights in any other were adjudicated. The court in its charge left it to the jury to say whether the rights of Haney Patterson in the certificate were settled by the decree or not. This was error. It was the province of the court to construe the decree, and if any question was made as to its effect upon her rights in the certificate, the court should have instructed the jury that her interest in that property was not affected by that adjudication.
It is assigned, in substance, that the court erred in charging the jury that under a certain state of circumstances, plaintiffs were barred of a right of recovery by an adverse holding of the certificate for a period of two years. It is not clear to us that the court so charged, though we infer from the language of the instructions that the court was of opinion that if Alethea Brooks got possession of the certificate and held it as her own, distinctly repudiating the claims of Haney and William Patterson and of their heirs, then the title to the certificate may have been forfeited by the statute of limitations. If so, this was error. The certificate itself is a mere evidence of a right to land, which right *608 is in contemplation of law personal property, but the certificate is not the property itself. (Shifflet v. Morelle, ante, 382.) No adverse holding, however long the time, gives title by limitation to the certificate or the right evidenced by it as against the true owner. This has been expressly decided by this court. (Barker v. Ivenson, 66 Texas, 407.) It is due to the learned judge who tried the case in the court below to say that the opinion in the case cited had not been delivered when the charge under consideration was given.
It is also complained that the court erred in its charge to the jury upon the question of statute of limitations of five years, and we think the assignment upon this point well taken, In order to sustain a title by limitation of five years the deeds under which the party claims must have been duly registered during the prescribed period—that is to say, the adverse possession must continue for five years, under a deed or deeds, which were registered during the same length of time. The statute does not run until the registration of the deed, although the adverse possession preceded the record. The deeds in this case were not recorded until the suit was brought, and the jury ought to have been instructed that they would not sustain the plea of limitation of five years. It was error to give the jury the provisions of the statute upon this subject when the evidence was clearly insufficient to sustain the plea. (Cook v. Dennis, 61 Texas, 246.)
Appellant’s twenty-second assignment of error complains of the action of the court in giving a special charge at the request of defendants. In this charge the jury are instructed, in effect, that if, upon the death of Edward Patterson, his widow paid his funeral expenses and other community debts “out of her own means, then his heirs could not recover the certificate in question or the land located thereby until they had first reimbursed her, and that the widow had the right to hold the certificate and land located by it and to sell the same for her reimbursement.” The jury are also instructed in the same charge that “if the plaintiff or those under whom they claim knew or might have known by ordinary diligence the facts with reference to said certificates and their interest therein, and that as a fact the said Alethea (the widow) was claiming to be the sole owner thereof, and that as such she exercised all acts of ownership over said certificate for more than ten years prior to its location, “then any suit of said plaintiffs after that period against any person claiming said land located under said certificate is but the asser *609 tion of a stale demand, and you will find for defendants against all the plaintiffs.”
Opinion delivered October 14, 1887.
These instructions, as applied to the facts, are misleading; and erroneous as propositions of law. Alethea Brooks testified that she “paid all the debts against Edward Patterson’s estate, and his burial expenses and expenses of last illness, amounting to about one hundred dollars.” She nowhere says this was paid from her separate estate. If paid from the community, then she certainly had no claim against the certificate by reason of the payment. If the debts were paid from her own separate funds, then, at most, she would have had a claim for reimbursement from Patterson’s heirs, in any suit, for a partition of the property. A payment of community debts in 1841 gave her no right to sell, in 1883, any greater interest in the land located by virtue of the certificate than she acquired under the certificate by virtue of her marriage with Patterson. The plaintiffs themselves, as the heirs of W. E. Patterson, who was the heir of Edward Patterson, were the holders of the legal title, and the doctrine of stale demand was not applicable to this claim. (Edwards v. Brown, 4 S. W. Rep., 380; same case, 5 S. W. Rep., 87.)
Appellants also complain that the court erred in instructing the jury that, because Mrs. Harvey’s coverture had not been pleaded, therefore they should not consider that fact in determining the pleas of limitations as against her; and counsel argue that, since the fact of her marriage had been proved without objection, she was entitled to the benefit of the proof, without any allegation to support. But the ruling of this court is otherwise. (Banking Company v. Stone, 49 Texas, 4.)
There are many other questions presented by the assignment of error and the brief of counsel, but in our opinion they are not likely to arise upon another trial. They are, therefore, not considered in this opinion.
For the errors pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.