[No. 14432. In Bank. — March 28, 1892.]

## CALIFORNIA SOUTHERN HOTEL COMPANY, Respondent, *v.* C. R. CALLENDER, Appellant.

Corporation — Subscription Agreement — Waiver of Irregularities in Formation of Corporation. — A subscriber to the stock of a corporation, to be subsequently organized upon the happening of certain conditions specified in the subscription agreement, waives any defense he may have to the subscription, by reason of the non-performance of the conditions, by voluntarily and intentionally acquiescing, with knowledge of the facts, in the incorporation of the company.

Id. — Waiver, how Proved. — Such waiver may be express, or it may be implied from the acts and declarations of the subscriber; and a payment of a call with full knowledge of the facts is such a waiver.

Id. — Finding of Waiver. — In an action by the corporation on the subscription, a finding of the ultimate fact that the subscriber had " waived" any right he may have had to object to the organization of the corporation implies that he had a knowledge of the right waived, and that his waiver was voluntary; and this conclusion is not affected by the findings of certain probative facts, the only tendency of which was to prove the

waiver, although such probative facts may be insufficient in themselves to show a waiver.

ID. — CERTIFICATE OF STOCK — ISSUANCE OF. — It is not essential to the ownership of stock in a corporation that a certificate for the stock should have been issued to the stockholder; nor need the corporation issue a certificate to a subscriber until the subscription price has been fully paid.

ID. — ACTION ON SUBSCRIPTION — LIABILITY FOR CALLS. — A corporation may maintain an action on the contract of subscription against a subscriber to its stock to recover calls made in pursuance to the terms of the contract; and it is not necessary that such calls should be made in the mode prescribed by the Civil Code for the levy of assessments upon the stock.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.

The facts are stated in the opinion.

*Venable & Goodchild,* for Appellant.

*J. M. Wilcoxon,* for Respondent.

VANCLIEF, C. — The plaintiff is a California corporation, to whose capital stock the defendant subscribed five thousand dollars, before its organization, that being fifty shares of the one thousand shares into which the capital stock of one hundred thousand dollars was divided. After having paid two thousand dollars of this subscription, the defendant refused to pay any part of the remainder, and this action was brought to recover from him the remaining three thousand dollars. The cause was tried by the court, and judgment was given in favor of the plaintiff for the sum demanded. The defendant appeals from the judgment on the judgment roll, without bill of exceptions, and contends that upon the findings of fact the judgment should have been given for the defendant.

The following is a copy of the written agreement to and upon which defendant subscribed for the stock: —

" We, the undersigned, do hereby agree to and with each other, that we will organize and form a corporation, under the laws of the state of California, for the purpose

of erecting, building, and owning a hotel building in the city of San Luis Obispo, county of San Luis Obispo, state of California, and for the purpose of purchasing and owning all such real and personal property as may be necessary to be used in connection of said hotel building; and we agree that the capital stock of said corporation shall be one hundred thousand ($100,000) dollars, divided into one thousand (1,000) shares, of the par value of one hundred dollars each; and we agree to and with each other, that we do respectively subscribe for the number of shares of the stock of said corporation as are set after our respective names, and that we will pay for the same the said par value thereof, at such times and in such manner as may be determined by the board of directors of the said corporation, to be hereafter chosen. And we further agree that whenever seventy thousand ($70,000) dollars of said capital stock has been subscribed for, a meeting shall be called for the purpose of electing a board of directors, and taking such steps as are required by law to form the said corporation, and that at such meeting the owners of a majority of said subscribed stock shall constitute a quorum, and are authorized to elect said board of directors, and transact any business necessary to fully complete the organization of the said corporation; that the number of directors and the term of said corporation shall be determined at such meeting."

Here follows the list of subscribers, among whom is the defendant for "fifty shares, — five thousand dollars." These subscriptions amounted to 772 shares. Among them was one of the Pacific Coast Steamship Company and Pacific Coast Railway Company for one hundred shares, payable in freightage. This subscription purports to have been made through the agency of Goodall, Perkins & Co. Another of the subscriptions is by Edwin Goodall for 125 shares, partly payable in a block of land, if accepted by the company, estimated at $7,500, and the balance of $5,000 in cash.

The court finds that Goodall, Perkins & Co. were not

authorized to subscribe for the steamship and railway companies, but that the subscription of these companies, and also that of Edwin Goodall, entered into the computation, and constituted a part of the 772 shares subscribed before the organization of the corporation. The court further found that the corporation was organized on August 17, 1887, and that the articles of incorporation included as subscribers the name of the Pacific Coast Steamship Company for 100 shares, amounting to $10,000, and that of Edwin Goodall for 125 shares, amounting to $12,500, without conditions; and further found "that at the preliminary meeting of stockholders held for the purpose of considering whether or not the incorporation aforesaid should be organized and formed, defendant was not present, and did not vote for the shares subscribed for by him as aforesaid, and did not acquiesce in or agree that the incorporation should be formed on the subscription aforesaid; . . . . that Edwin Goodall, for himself and for the Pacific Coast Steamship Company, united in the call for the meeting of the stockholders last aforesaid, and each were represented at said meeting to the full amount of the stock subscribed for by them as aforesaid by Edwin Goodall, and he voted and acted at said meeting for the full amount of the stock subscribed for by them, viz., 225 shares, of the value of $22,500, and each has ever since the incorporation of the plaintiff been, and now is, a stockholder in said corporation for the full value and amount of the stock aforesaid subscribed by him"; and further found that the subscriptions of the steamship company and Goodall were accepted and acted upon by plaintiff, and have been fully paid to the company; and further found that "defendant has at all times recognized the validity of the corporation aforesaid, by paying two thousand dollars of said original subscription of five thousand dollars, and not otherwise, and has never dissented from or protested against any of its acts; that defendant has, since said corporation was formed, acquiesced in the building of the hotel

mentioned in said agreement, and furnishing the same, and the incurring of debts and expenditures of money therefor, by paying said two thousand dollars of said subscription to said corporation, and not otherwise; . . . . that a large indebtedness has been incurred by plaintiff, and large sums of money expended, relying upon the subscriptions aforesaid"; and further found (under the head of "conclusions of law") that the defendant "has waived any defense he might otherwise have had to said subscription by reason of the manner of plaintiff's incorporation."

The findings show that calls were made upon the subscribers, including the defendant, as follows: November 16, 1887, twenty per cent, payable November 25th; March 17, 1888, twenty per cent, payable March 25th; May 23, 1888, twenty per cent payable June 1st, twenty per cent payable June 15th, and twenty per cent payable July 1st.

1. The first and principal point made by appellant is, that the corporation was organized before there was a valid subscription of seventy thousand dollars of the capital stock, contrary to the agreement subscribed by defendant, inasmuch as Goodall, Perkins & Co. subscribed for the steamship company and railway company without authority, and in part conditionally.

It appears, however, that these subscriptions were changed before the corporation was organized, the railway company being dropped, and the subscription of the steamship company being substituted for that of both of these companies, and for the full amount thereof, and the subscription of the steamship company and that of Goodall being made unconditional, and so entered in the articles of incorporation. It is also found by the court that Goodall, for himself and for the steamship company, united in the call for the meeting of the subscribers for the purpose of considering the propriety of organizing the corporation; that Godall represented all their stock at that meeting; that he signed and acknowledged the articles of incorporation; and that the steam-

ship company and Goodall paid all the calls upon all the stock subscribed by them. It is not expressly found, nor, it seems to me, by necessary implication, that Goodall was not authorized by the steamship company to join in the call for the meeting to make the change in the subscription, and to represent the steamship company in the organization of the corporation; but only that the original subscription by Goodall, Perkins & Co. for the *two* companies was without authority. If Goodall was authorized by the steamship company to represent it in all these matters, the corporation was properly organized according to the subscription agreement, and the defendant has no ground of complaint. As, however, the findings are not quite clear upon this point, and as I think the judgment should be affirmed on another ground, which does not involve any doubtful question of construction of the findings, the decision of the case need not rest upon this point.

2. The court found that the defendant had " waived any defense he might otherwise have had to said subscription by reason of the manner of plaintiff's incorporation."

Says Mr. Cook, in his book on Stocks and Stockholders, sec. 181: "A subscriber may waive the defense that the full capital stock of the corporation has not been subscribed. This waiver may be either express, or implied from the acts or declarations of the subscriber."

Again, at section 186, the same author says: "Where the subscriber made his contract of subscription previous to and in anticipation of the incorporation, and does not, by his subsequent acts, acquiesce in the mode of incorporation, he may set up that the corporation has not been incorporated, and that he is not liable."

At section 198 he says: "A subscriber to stock in a corporation may waive any defense he may have to the subscription. The waiver may be express, or it may be by implication from the acts and declarations of the subscriber. Thus a payment of a call with full knowledge of the defense is held to be a waiver, and any act

indicating a clear intent to abide by or accept or pass over an objection which the subscriber might make will be held to be a waiver." (See authorities cited in notes to above quotation; Thompson on Liability of Stockholders, sec. 120; Taylor on Private Corporations, sec. 519; *New Hampshire etc. R. R. Co.* v. *Johnson,* 30 N. H. 390; 64 Am. Dec. 300.)

In *Fishback* v. *Van Dusen,* 33 Minn. 111, Mr. Justice Mitchell, speaking for the court, said: "Whether there has been a waiver is a question of fact. It may be proved by various species of evidence,—by declarations, by acts, or by forbearance to act." Other authorities say it is a mixed question of law and fact, but that each case must depend upon its own peculiar circumstances and surroundings. "It is a question of intention, and a fact to be determined by the triers of fact" (*Okey* v. *State Ins. Co.,* 29 Mo. App. 111; *Ehrlich* v. *Insurance Co.,* 88 Mo. 249; *Drake* v. *Insurance Co.,* 3 Grant Cas. 325; *Witherell* v. *Insurance Co.,* 49 Me. 200); "and though the waiver must be intentional and clearly proven, the sufficiency of the evidence relating thereto is for the jury." (*Insurance Co.* v. *Schollenberger,* 44 Pa. St. 259.)

The only question of law that can be involved in the question of waiver must relate to the legal definition of the word; for example, a jury might be properly instructed, as matter of law, that a waiver must be voluntary, and that it implies a knowledge of the right, claim, or thing waived; yet, whether it was voluntary, and whether the party had knowledge of the right or thing waived, are still questions of fact to be submitted to the jury.

In this case, the court found the ultimate fact that defendant had waived any right he may have had to object to the organization of the corporation. This finding implies the defendant's knowledge of the right waived, and that his waiver was voluntary, since these attributes are included in the legal definition of a waiver. Nor is this conclusion affected by the fact that the court also found certain probative facts, the only tendency of

which was to prove the waiver. That defendant recognized the validity of the corporation, and acquiesced in the building of the hotel, etc., "not otherwise" than by paying the first two calls on his subscription, and never dissenting or protesting against any of the acts of the corporation, are in no degree inconsistent with the waiver found, as they do not tend to prove that the waiver was involuntary, or without defendant's knowledge of his alleged right. Conceding, therefore, that the probative facts (unnecessarily) found are insufficient to prove a waiver, yet, as the record contains no part of the evidence, it must be presumed that there was sufficient evidence to justify the finding of a waiver.

3. It is contended that this action cannot be maintained "on the theory that defendant is a stockholder, and, as such, liable to the corporation for assessments," for the alleged reason that it does not appear "that the corporation ever awarded any stock to defendant, or entered his name on its stock-book, or anything to show that defendant was a stockholder."

It is alleged in the complaint, and expressly found by the court, that defendant was the owner of fifty shares of stock at all the times when the calls were made. It was not necessary to defendant's ownership of the stock that a certificate for the stock should have been issued to him (*Mitchell* v. *Beckman*, 64 Cal. 121, and authorities there cited); nor was the corporation bound to issue such certificate until the subscription price was fully paid; nor was it necessary to a recovery on the contract of subscription that the directors of the corporation should have levied assessments upon the stock in the mode prescribed by the Civil Code. By the contract of subscription, the defendant agreed to pay upon the call of the board of directors, viz., "at such time and in such manner as may be determined by the board of directors of the said corporation, to be hereafter chosen"; and the action was properly brought upon this contract. (*West* v. *Crawford*, 80 Cal. 27; *Lankershim Ranch etc. Co.* v. *Her-*

*berger*, 82 Cal. 600; Angell and Ames on Corporations, sec. 549.)

I think the judgment should be affirmed.

Fitzgerald, C., and Belcher, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment is affirmed.

Rehearing denied.