COMMONWEALTH BONDING & CASUALTY INS. CO. v. HILL et al. (No. 882.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 18, 1915. On Motion for Rehearing, Feb. 16, 1916.)

1. CORPORATIONS ⬤⟳89(2)—SUBSCRIPTION TO STOCK—CALL.

A call for a subscription to stock in a corporation is not necessary when the contract of subscription contains the promise to pay the amount subscribed at a specified date, as the obligation matures at such time.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 375, 376; Dec. Dig. ⬤⟳89(2).]

2. CORPORATIONS ⬤⟳78 — ISSUE OF STOCK — PAYMENT OF SUBSCRIPTION.

A corporation is not bound under a subscription to its stock to issue a certificate of stock until the subscription is fully paid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 219–231, 420–424, 429–434; Dec. Dig. ⬤⟳78.]

3. CORPORATIONS ⬤⟳78 — SUBSCRIPTION TO STOCK—LIABILITY.

On the corporation's acceptance of a subscription to its stock with the indorsement of secured notes to it the subscriber became liable thereon.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 219–231, 420–424, 429–434; Dec. Dig. ⬤⟳78.]

4. CORPORATIONS ⬤⟳99(1)—SUBSCRIPTION TO STOCK—VALIDITY—CONSTITUTIONAL PROVISIONS—"ISSUE."

Under Const. art. 12, § 6, declaring that stocks and bonds issued without money paid therefor shall be void, and in view of Rev. St. 1911, art. 1170, providing for the forfeiture of stock on nonpayment of the subscription notes, a subscription contract with the promoter of a bonding and casualty insurance company upon which the subscriber executed his notes payable to the promoter and to secure which he executed a deed of trust on certain land, which stock was not delivered to the subscriber, but held as additional security for the payment of the notes, was not void or illegal, as the stock subscribed for did not represent any outstanding

liability for stock or any representation to the public that the corporation had in its hands actual cash as represented by fully paid up certificates, and as there was no "issue" of such stock; the term "issue," as a noun, meaning the act of sending or causing to go forth, the act of passing out, and, as a verb, meaning to send out officially, to send or put forth, to put in circulation, to emit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 444; Dec. Dig. ☞99(1).

For other definitions, see Words and Phrases, First and Second Series, Issue.]

**5. EVIDENCE ☞83(1) — PRESUMPTION — PERFORMANCE OF OFFICIAL DUTY.**

The presumption is that the officer charged with the issue of a permit to a foreign corporation on its filing of an affidavit showing that it had on deposit with the state treasurer $100,000 did his duty.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. ☞83(1).]

**6. CORPORATIONS ☞92 — SUBSCRIPTION TO STOCK—NOTES—VALIDITY.**

Notes given as part of the subscription to stock of a corporation are not void, and may be enforced and collected as valid obligations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 366; Dec. Dig. ☞92.]

*On Motion for Rehearing.*

**7. EVIDENCE ☞158(26) — BEST AND SECONDARY EVIDENCE — ISSUE OF CORPORATE STOCK.**

The issuance of the stock of the corporation to its subscriber should be established by the stock itself, which should be produced as the best evidence of its issuance and acceptance; and parol evidence as to the issuance of such stock is inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 507–513; Dec. Dig. ☞158(26); Corporations, Cent. Dig. § 1736.]

Appeal from District Court, Swisher County; R. C. Joiner, Judge.

Action by W. F. Hill and others against the Commonwealth Bonding & Casualty Insurance Company, with plea of intervention by C. C. Cantrell, and cross-action by the defendant company. Judgment for plaintiffs and the intervener denying the defendant's cross-action, and defendant appeals. Reversed and remanded.

Speer & Brown, of Ft. Worth, and Martin, Kinder, Russell & Zimmermann, of Plainview, for appellant. Alexander, Baldwin & Ridgway, of Ft. Worth, and Moss & Leak, of Memphis, for appellees.

HUFF, C. J. We adopt the statement made by appellant, which is as follows:

"On October 30, 1914, appellee W. F. Hill (plaintiff below) filed this suit in the district court of Swisher county, Tex., against appellant, Commonwealth Bonding & Casualty Insurance Company (defendant below), to cancel three promissory notes for $500 each, and one for $250, payable to Commonwealth Organization Company, and executed by one C. C. Cantrell (intervener and plaintiff below) on December 1, 1910, nearly four years before suit filed, and seeking to cancel deed of trust given at the same time by said C. C. Cantrell to John Scharbauer, trustee for Commonwealth Organization Company, on N. E. ¼ of survey No. 130, block M10, Swisher county, Tex., plaintiff alleging that after the giving of said notes and deed of

trust by Cantrell, he, the said Cantrell, sold said land to one G. W. Harp, who in turn sold to appellee Hill, and Hill sold one-half interest therein to appellee Dora Davis April 20, 1914, or about six months prior to suit. Trustee Scharbauer, the Commonwealth Organization Company, and G. W. Harp were not parties to the suit, and C. C. Cantrell and Dora Davis and husband, M. L. Davis, were not original parties to suit, but on trial of cause appellee Hill's attorneys joined the names of Dora Davis and M. L. Davis as plaintiffs with Hill in an amended petition, and filed a plea of intervention for C. C. Cantrell seeking for Cantrell the same relief sought for the plaintiffs. Appellees sought a cancellation of said notes and deed of trust upon the bare technical legal allegations that said notes were given in payment for stock in a corporation issued to intervener, Cantrell, and were therefore void, making no allegations that same were fraudulently obtained or that said stock was not in a going concern and worth par value.

Appellant, the Commonwealth Bonding & Casualty Insurance Company, answered, denying that said notes were given in payment for such stock, but claiming that same were executed to secure a subscription contract for stock, and were held as collateral security to said subscription contract, and, further, that it is a corporation incorporated under the laws of Arizona, and under the laws of that territory said notes were valid and not prohibited even though given for stock direct. Appellant also by way of cross-action sought judgment on said notes and foreclosure of deed of trust.

"Upon trial before the court without a jury judgment was entered on April 29, 1915, in favor of plaintiffs Hill, Dora Davis, and husband, M. L. Davis, and intervener Cantrell, canceling said notes and deed of trust lien, denying defendant the relief sought in its cross-action, and decreeing that title and possession of the certificates of stock should be divested out of intervener and vested in defendant."

C. C. Cantrell entered into the following subscription contract with the Commonwealth Organization Company:

"Commonwealth Bonding & Accident Insurance Company.

"Capital $10.00.       Surplus $30.00.

"No. 1124.       Subscription to Capital Stock.

"Whereas, Commonwealth Organization Company, of Ft. Worth, Texas, are promoting the organization of a Casualty Bonding & Accident Insurance Company, to be incorporated in pursuance of the laws of the State of Texas, under the name of Commonwealth Bonding & Accident Insurance Company, or such other name as may be selected, with an authorized capital stock of three hundred thousand dollars, and a paid-up capital of at least two hundred thousand dollars, paid up and free from organization expenses, all in accordance with a printed prospectus issued by them and delivered to me;

"And whereas, by their acceptance of this subscription, said Commonwealth Organization Company agree to endeavor with all reasonable diligence to accomplish on or before December 31, 1910, the organization of said corporation, with capital stock fully paid as aforesaid, they to defray all expenses of the organization and incorporation:

"Now, therefore, I do hereby subscribe for 50 one-tenth shares, of the par value of ten dollars each, of the capital stock of said Commonwealth Bonding & Accident Insurance Company, and agree with said company and the said Commonwealth Organization Company, to pay therefor the sum of $2,000.00 dollars, as follows: The sum of $1,750.00 dollars I agree to pay in money or securities satisfactory to the insurance department, with six per cent. interest, to said

Commonwealth Bonding & Accident Insurance Company or its trustees at Ft. Worth, Texas (which goes to capital and surplus), at any time after November 1, 1910, immediately upon receipt of notes from said Commonwealth Organization Company that its capital stock has been subscribed in good faith in amounts and at rates netting the company at least two hundred thousand dollars of capital in the aggregate when paid. The remaining sum of $250.00 dollars I agree to pay and do pay concurrently with this subscription to the said Commonwealth Organization Company, in consideration of their agreement hereinbefore recited, and in lieu of any further or other contribution to expenses of organization and incorporating said company.

"No conditions, representations, or agreements other than those printed herein shall be binding on Commonwealth Organization Company or the Commonwealth Bonding & Accident Insurance Company.

"Witness my hand this the 29th day of September, 1910. C. C. Cantrell [Name of Subscriber], Memphis, Texas. Occupation: Farmer. Witness: R. E. Bristol."

On December 1, 1910, Cantrell executed his four notes, three for $500 each, due in 12, 24, and 30 months after date respectively, and one note for $250, due 48 months after date, payable to the order of Commonwealth Organization Company, and to secure which he executed a deed of trust upon the land described in the petition to John Scharbauer, trustee. The deed of trust was filed for record January 20, 1911. Thereafter, on the 31st day of May, 1911, Cantrell conveyed the land to G. W. Harp by a quitclaim deed for a recited consideration of $4,800, as paid, and the assumption by Harp assuming the obligation of the original purchaser of the land to the state of Texas. This deed recites that a vendor's lien is retained to secure the note. Harp by school land deed conveyed the N. E. ¼ of the section to W. F. Hill, which was filed for record October 27, 1911. W. H. Hill conveyed to Dora Davis an undivided half interest to the land in question, dated April 20, 1914, and recorded November 3, 1914. The four notes were introduced in evidence, which showed to bear interest at the rate of 6 per cent. per annum until maturity, and thereafter until paid at the rate of 10 per cent. per annum, payable annually, and providing for the usual 10 per cent. attorney's fees, and said notes being secured by $2,000 stock in the Commonwealth Bonding & Casualty Insurance Company, and by deed of trust given to John Scharbauer, trustee. The notes were signed by Cantrell and indorsed to appellants by the Commonwealth Organization Company.

The charter for the Commonwealth Bonding & Casualty Insurance Company was obtained under the laws of Arizona on the 23d day of March, A. D., 1911. The purposes for which said corporation was organized were to act as surety, guarantor of the fidelity of employés, trustees, executors, administrators, guardians, and to act as administrator, etc. That the authorized capital stock was to be $300,000, divided into 30,000 shares of the par value of $10 each.

The deed of trust was made to Scharbauer, as trustee, to secure the Commonwealth Organization Company in the payment of the notes above specified, and was dated December 1, 1910. Cantrell by his testimony showed that the certificate of stock was issued, and that it was left in the hands of R. J. Thorne, an attorney, who was then representing the Commonwealth Bonding & Casualty Insurance Company. He states that the note and deed of trust were executed in consideration for which he was to receive a certificate of shares of stock in the appellant company. There was no stock certificate offered or produced at the trial and Cantrell's testimony as to the stock is all the testimony that there is in the record as to the issuance of the stock, and this testimony was admitted over the objection of appellant.

[1] It is a generally recognized rule that a call for subscription to stock in a corporation is not necessary when the contract of subscription contains the promise to pay the amount subscribed at a certain specified date or dates; the obligation matures at the time agreed upon.

[2, 3] A corporation is not bound under the subscription to issue a certificate of stock until the subscription is fully paid. California Hotel Co. v. Callender, 94 Cal. 120, 29 Pac. 859, 28 Am. St. Rep. 99. When the appellant accepted Cantrell's subscription contract with the indorsement of the secured notes to it, he became liable thereon. Panhandle Packing Company v. Bivins, 140 S. W. 523.

[4] The appellee Cantrell has not paid his subscription contract for stock, and for that reason appellees assert his contract is void, and that the note and deed of trust given to secure his subscription are void. Const. art. 12, § 6, does not declare that a subscription contract with a note secured for subscription is void; but it is the stock and bonds issued without money paid therefor, which are declared to be fictitious stock or indebtedness, that are void. If the notes were given for a lawful purpose, we do not think they should be declared void. The fact that the contract was to pay for stock in the corporation does not render it illegal. To construe the Constitution to have the effect that such contract was illegal would render it impracticable to form a corporation. The Constitution prohibits "the issue" of stock by a corporation unless the money is paid. In San Antonio, etc., v. Deutschmann, 102 Tex. 207, 105 S. W. 486, 114 S. W. 1174, our Supreme Court said stock "can be paid for in installments." If it can be so paid for, then a contract of subscription with secured notes to be paid in installments would not be an illegal contract. The subscription and the notes given as part thereof are not for an illegal issue of stock. The purpose of the Constitution and laws was doubtless to prevent the issuance of watered stock. If a corporation has not issued such stock, there is no representation to the public that it has

in its hands actual cash as represented by fully paid up certificates. If it does not execute such certificate or deliver the same, there is no obligation on the corporate body for such stock. The stock subscribed for does not represent an outstanding liability for stock. If the contention of the appellees shall prevail, the very object of the law would be thwarted. A corporation could not force collection of stock subscriptions because certain subscribers will not pay and cannot be made to pay. Innocent third parties would be made to suffer and an injustice worked against other subscribers who in good faith have complied with their contract. "Issue," in its ordinary sense, is thus defined in 23 Cyc. 358a:

"As a noun: The act of sending or causing to go forth; a moving out of an inclosed place; egress; the act of passing out; exit; egress or passage out; the ultimate result or end. As a verb: To send out; to send out officially; to send forth; to put forth; to deliver for use or authoritatively; to put in circulation; to emit; to go out; to go forth, as authoritative or binding; to proceed or arise from; to proceed as from a source."

Cantrell says the stock was issued to him for these notes, but it is to be noted that the stock was never delivered to him. He says he saw it in the possession of Robt. J. Thorne, an attorney for appellant company. Moss also testified he saw the stock in the hands of Thorne. It should also be noted that the notes in question were executed to the Organization Company, and before the appellant was incorporated. The evidence is also to the effect that the stock was not delivered to Cantrell, but held as additional security for the payment of the notes. This stock was not therefore sent out or put forth and delivered to Cantrell. It was never in circulation or binding upon the corporation, or by its authority emitted as an obligation binding upon the corporation. The framers of the Constitution evidently used the word "issue" in its ordinary sense. If so, there was never an issue of this stock, and no illegal act with reference thereto. Hidalgo County Drainage Dist. v. Davidson, 102 Tex. 539, 120 S. W. 849. The conclusion of Cantrell that the stock was issued to him for the notes is contrary to the facts upon which he bases that conclusion. He had executed his notes before any stock could possibly be issued to him. He had agreed with the Organization Company that he would give his notes and secure the same as part of his subscription, or that he would pay the money. He elected to give the notes with security. The Organization Company transferred the contract and the notes to appellant. This transaction should not be denounced as illegal. He made the contract for the purpose of bringing into existence the corporation, and employed the Organization Company as his agent to perform that labor, and, when this was done, he agreed to pay his subscription contract. The law did not require before incorporating that the stock should be fully paid before incorporation (article 1121, subd. 37, and articles 1129, 1130, 4928, R. C. S.), such as is required in life insurance companies (article 4725e). The law only required $100,000 to be paid in by domestic corporations upon obtaining charters issued prior to the act of the Legislature of 1913 (page 123, § 1).

[5] This company was organized and permitted to do business in this state in 1911. Article 4928 was amended in 1913 by adding thereto that all foreign corporations should file an affidavit showing that such corporations had on deposit with the state treasurer $100,000; but, should the law, as now amended, apply to foreign corporations as it did to domestic corporations at the time the permit was granted by this state to appellant, the charter shows that there was a $300,000 capital stock authorized, and therefore all the capital stock had not been paid when the charter was granted or the permit issued, and no presumption that the capital stock, including Cantrell's, was fully paid and issued, or so represented to have been. The presumption is that the officer whose duty it was to issue the permit did his duty. The mere fact that the notes were secured by the stock of Cantrell in the corporation does not evidence an issue of stock or make an illegal contract. This agreement, if such it was, is no more than the law fixed on such stock without such an agreement. Article 1170, R. C. S. It has been held by the Courts of Civil Appeals that notes given as part of the subscription to stock are not void, and that they may be enforced and collected as valid obligations. Cope v. Pitzer, 166 S. W. 447; Bank v. Falvey, 175 S. W. 833; Horn Bros. v. Baker, 173 S. W. 470; Davis v. Burns, 173 S. W. 476–480. This court has hitherto held in two cases not reported that a subscription contract upon which appellant corporation was organized was valid.

[6] Our attention has been called to the case by the Court of Civil Appeals of the Second District, not yet published, a copy of which has been furnished us. Cattlemen's Trust Company v. Turner, 182 S. W. 438. This case goes into a thorough discussion of the question here involved, and we are persuaded that the conclusion there reached is a correct one, and we are in accord with the views there expressed, and believe that case to be decisive of the question here at issue. We think the cases cited by appellees are distinguishable from this, in most of which stock was issued for notes which it appears the court held violated the provisions of the Constitution referred to. But where, as in this case, the note is a part of the subscription, and the stock was not issued or delivered to the subscriber for the notes, but held to secure the payment of the subscription and notes, we think the various courts, so far as has been called to our attention, hold that the notes will be valid and collectible.

We believe the trial court was in error in canceling the four notes and the deed of trust on the land; that he should have rendered judgment upon appellant's cross-petition on the notes for the amount sued for, together with the interest and attorney's fees stipulated for in the notes, together with the foreclosure of the lien prayed for on the land.

The judgment of the trial court will be reversed, and judgment here rendered for appellant, in accordance with its prayer.

Reversed and rendered.

### On Motion for Rehearing.

[7] We believe the fourth assignment by the appellant should be sustained, and that the court was in error in admitting, over the objection of the appellant, parol testimony as to the issues of a certificate of stock to Cantrell. The issuance of the stock to him should be established by the stock itself, and we think that it should be produced as the best evidences of its issuance and existence. This is the fact upon which appellee's right of recovery, in a measure, depended, and parol evidence ought not be permitted to establish such fact, in the absence of the proper predicate for its nonproduction. Harvey v. Cummings, 68 Tex. 599, 5 S. W. 513. A delivery of the certificate, of course, could be shown by parol. The testimony of Cantrell that he left the certificate in the hands of the attorney for the company does not necessarily prove that it was ever delivered to him by the company. It is just as consistent that he saw it there first and left it as that it was delivered to him, and that he took it to the attorney and left it with him. The facts show in this case, according to our view, that it was under the control of the company, and that it was retained to secure the payment of the note. The issuance and existence of the certificate was capable of better proof than by parol. The delivery to Cantrell we do not think sufficiently proven, and on that ground we reversed and rendered this case. Perhaps, under the rule, we should have reversed and remanded, as our conclusion of the facts must necessarily be contrary to the findings of the trial court.

The judgment, therefore, reversing and rendering, will be set aside, and the case reversed and remanded, and to that extent the motion for rehearing will be granted.