## Appeal of the NATIONAL REFINING CO. OF OHIO ET AL.[1]    Docket No. 186.

The Board has jurisdiction to determine whether or not an assessment of a deficiency in tax against a taxpayer is barred by the statute of limitations contained in section 250(d) of the Revenue Act of 1921 and section 277(a)(2) of the Revenue Act of 1924.

The filing of an amended return does not toll the statutes of limitations contained in section 250(d) of the Revenue Act of 1921 and section 277(a)(2) of the Revenue Act of 1924.

Submitted November 18, 1924;    decided December 23, 1924.

*J. W. Reavis, Esq.*, for the taxpayer

---

[1] The following affiliated corporations are parties to this appeal: National Refining Co. of Missouri, National Refining Co. of Tennessee, National Refining Co. of Iowa, National Refining Co. of Nebraska, National Refining Co. of Illinois, National Refining Co. of Indiana, National Refining Co. of Oklahoma, Spurlock Petroleum Co., Sterling Oil & Gas Co., National Pipe Line Co., Cudahy Oil Co., and Northern Oil Company.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LITTLETON, and SMITH.

This appeal involves a deficiency in income and excess profits taxes for the year 1917 in the amount of $95,201.21 and at the hearing was presented on admissions contained in the pleadings and on documentary and oral evidence.

### FINDINGS OF FACT.

1. The National Refining Co. of Ohio is a corporation organized under the laws of the State of Ohio with its principal offices in the city of Cleveland, Ohio. It is the parent company of the affiliated corporations named in the title of this appeal, and is hereinafter referred to as the taxpayer.

2. The taxpayer and its subsidiaries duly filed tax returns for the calendar year 1917 on March 15, 1918. In letters dated February 26, 1923, the Commissioner notified the taxpayer and its subsidiaries that an examination of their books relative to the year 1917 disclosed a total additional tax of $131,403.39 for such year. All of the letters were alike in text and each contained the following:

> You are advised that section 250(d) of the Revenue Act of 1921 provides that assessment of additional tax found due as a result of an audit of a return must be made within five years from the date on which the return was filed, *unless the Commissioner of Internal Revenue and the taxpayer consent in writing* to a later determination, assessment, and collection of such tax. * * *
>
> Assessment of any additional tax found due on your return must be made not later than April 15, 1923, the expiration of the five-year period provided in section 250(d). *If you desire that your case be given consideration before assessment is made, it will be necessary that the inclosed form of waiver be signed and returned to this office immediately,* otherwise assessment will be made not later than 15 days from the date of this letter. (Italics ours.)

3. Upon receipt of the letters, the taxpayer and each of its subsidiary corporations signed and executed waivers, under date of March 5, 1923, in the form proposed by the Commissioner, and filed them in the Commissioner's office, where they were signed by the Commissioner. Each of the waivers contained the following statement and limitation:

> This waiver is in effect for one year from the date it is signed by the taxpayer.

This extended the period for the assessment of 1917 taxes from March 15, 1923, to March 5, 1924.

4. On September 7, 1923, the Commissioner addressed letters to the parent and subsidiary corporations wherein he notified them that the income-tax returns for 1917 had been reexamined and that he proposed to assess additional taxes for that year in the amount of $252,079.13. The letter to the parent corporation contained the statement, " Office letter dated February 24, 1923, is annulled." This date is obviously an error and should have been February 26, 1923. The letters of the same date addressed to the subsidiaries referred to the letter to the parent company. All the letters contained this provision:

> In accordance with the provisions of section 250(d) of the Revenue Act of 1921, you are granted 30 days within which to file an appeal and show cause or reason why this tax or deficiency should not be paid.

The final words of explanation in the schedules accompanying the letter of September 7, 1923, are "Waivers for 1917 filed March 5, 1923."

5. On September 17, 1923, and within the 30 days allowed by section 250(d) of the Revenue Act of 1921, each of the corporations named above, parent and subsidiaries, wrote to the Commissioner protesting the proposed assessment and demanding a hearing. The Commissioner acknowledged the receipt of these protests in a letter dated September 22, 1923, and fixed October 11, 1923, as a date for hearing thereon at Washington, D. C.

6. At the hearing, as a part of its evidence in support of the protest against the proposed assessment, the taxpayer introduced and filed in the Commissioner's office, and not with the collector at Cleveland, Ohio, a volume containing about 70 pages of calculations and exhibits bound in a leather cover, on the front page of which was printed the title: "The National Refining Co., Cleveland, Ohio, Final Amended Income and Excess Profits Tax Return with Consolidated Statements and Schedules, Year 1917." This was admitted in evidence before the Board and marked "Taxpayers' Exhibit 5." Attached to the third page of this bound volume was an accomplished corporation income tax return (Form 1031) entitled "Final Amended," which was not verified, and, also, an accomplished corporation excess profits tax return (Form 1105), which was verified October 4, 1923. The remainder of the volume consisted of tabulations and schedules such as reconciliation of tax return, balance sheets, profit-and-loss account, depreciation and depletion, etc.

7. After the hearing of October 11, 1923, no notice was received from the Commissioner by the taxpayer concerning the proposed assessment until July, 1924, when it received a letter from him, dated July 21, 1924, notifying it that a deficiency had been determined and that it had 60 days within which to appeal to this Board.

#### DECISION.

The deficiency in tax determined by the Commissioner in his deficiency notice of July 21, 1924, for the calendar year 1917, amounting to $95,201.21, is disallowed.

#### OPINION.

GRAUPNER: On the hearing of this appeal, the taxpayer waived its claims as to one of the two alleged errors asserted in its petition and confined its presentation and argument to the following assigned error of the Commissioner in determining the tax:

That the entire additional assessment as proposed in department letter dated July 21, 1924, against all of the above-named companies for the taxable year 1917, is outlawed under the Statute of Limitations contained in section 277(a)(2) of the Revenue Act of 1924.

In his answer to the petition, the Commissioner, after admitting most of the allegations of fact contained in the petition, alleged an affirmative defense in the following language:

(5) That the taxpayers, on or about October 4, 1923, filed with the Bureau of Internal Revenue amended income and excess-profits tax returns for the

taxable year 1917; that said amended returns were accepted by the Bureau of Internal Revenue and that the taxes proposed in said deficiency letter are due under said amended returns; that the taxes proposed in said deficiency letter arise and are based upon the information and statements contained in said amended returns.

The Commissioner averred, as propositions of law, that:

(1) The five-year limitation imposed by section 250(d) of the Revenue Act of 1921, and by section 277(a)(2) of the Revenue Act of 1924, for taxes due under the amended returns filed by the taxpayers began to run from the date the said amended returns were filed.

(2) The five-year limitations imposed by section 250(d) of the Revenue Act of 1921 and section 277 (a)(2) of the Revenue Act of 1924 have not expired.

At the hearing of the appeal the Solicitor objected to the introduction of the oral and documentary evidence offered by the taxpayer and, after its introduction, moved to strike it out on the following grounds; (a) that it was incompetent, irrelevant, and immaterial, and (b) that the Board has no jurisdiction to entertain an appeal which goes only to the remedy of the collection of taxes and not to the amount of the deficiency proposed by the Commissioner. Ruling on the motion was withheld and, for the purpose of clarifying the record, the motion is now denied.

We will consider the question of jurisdiction before passing upon the single issue presented by the taxpayer.

Section 900 of the Revenue Act of 1924 grants the Board power to hear and determine appeals filed under section 274 of the act. Section 274, the one applicable to the tax under consideration in this appeal, grants to the taxpayer the right of appeal if the Commissioner determines that there is a deficiency in respect of the tax imposed by Title II of the act. Nowhere does the act contain any limitation on the Board as to what it may consider in determining whether or not a deficiency in tax exists. There is no restriction on the taxpayer's asserting in his appeal from a deficiency that such tax is in violation of the Constitution, in violation of the provisions of any of the revenue acts, or illegal for any other reason. There is no more cause to prevent it pleading section 277(a)(2) of the Revenue Act of 1924 as a reason why a deficiency should not be determined against it than there is to deny it the right to plead any other section of the act. Congress clearly intended that this Board should relieve taxpayers from illegal or improper tax burdens.

In its report to the Senate, dated April 10, 1924, the Finance Committee of the Senate, in referring to the Board of Tax Appeals and its powers, said regarding the rights of a taxpayer:

*He is entitled to* an appeal and *to a determination of his liability* for the tax prior to its payment. (Italics ours.)

Similar language was used in the report of the Committee on Ways and Means to the House of Representatives (p. 44, report dated February 11, 1924). A reading of the debates on the Revenue Act of 1924 in the two houses of Congress is convincing of the fact that it was intended that this Board should have the power, and consequently the jurisdiction, to determine a taxpayer's *liability* for a tax prior to its payment.

Congress, at the same time and in section 277(a)(2) of the same act that created this Board, provided that the amount of income,

excess-profits, and war-profits taxes imposed by the Revenue Acts of 1909, 1913, 1916, 1917, and 1918 " shall be assessed *within five years after the return was filed,* and no proceedings in court for the collection of such taxes shall be begun after the expiration of such period." (Italics ours.)    This language clearly indicates that the taxpayer can not be forced to pay its tax after five years and that, therefore, there is no liability imposed upon it after that period.

It appears to be clearly evident that the plea of limitation raises a distinct question as to the *liability* of the taxpayer for the tax. It is also evident that Congress intended this Board to determine any liability and any taxpayer appealing to it regarding a deficiency imposed prior to payment of the tax.    Such being the situation, we do not hesitate to assume jurisdiction in this appeal.

We will now consider the merits of the issue raised by the taxpayer and the affirmative defense presented by the Commissioner.

The Commissioner tacitly admits that the liability of the taxpayer would be barred under the express waivers filed, but contends that, the taxpayer having filed the volume (Taxpayers' Exhibit 5) entitled " Final Amended Income and Excess Profits Tax Return" with the Commissioner, the Commissioner has five years from the date of filing thereof in which to make an assessment based upon that return.    In other words, it is the contention of the Commissioner that the so-called final amended return is an unlimited waiver which extends the operation of the statute of limitations for another five years.

Turning to the Revenue Acts of 1918 and 1921 we find no provision for either amended returns or waivers, nor do the Revenue Acts of 1916 or 1917 contain such provisions.    All of these acts provide in practically identical language for the filing of corporate returns and it will suffice to quote only a portion of section 13(b)(1) of the act of 1916 to show the expected action of a corporate taxpayer:

*The return shall be made to the collector of the district in which is located the principal office of the corporataion,* company, or association, where are kept its books of account and other data from which the return is prepared. * * * (Italics ours.)

See section 241(b) of the Revenue Acts of 1918 and 1921.    We can not find in any of the acts any express language or implication that amended returns are contemplated or that they will be given any special significance.    The Solicitor has ruled that:

The filing of an amended return does not extend the date for the beginning of the running of the statute of limitations as outlined in section 250(d) of the 1921 act, but that " the return " referred to in subdivision (d) of said section has reference to the original return and not to an amended return (S. M. 1404–III–13–1457).

He makes one exception to the effect that, where additional taxes are disclosed by an amended return, the return amounts to a limited waiver of the taxpayer to have such additional taxes determined, assessed, and collected within the five year period.    There is no evidence in this appeal to show that " Taxpayers' Exhibit 5 " disclosed any additional tax.    This exception is immaterial to the decision herein.

Sections 250(d) of the act of 1921 and 277(a)(2) of the act of 1924 provide that the limitation shall operate "five years after *the return* was filed." The phrase *the return* has a definite article and a singular subject; therefore, it can only mean one return, and that *the return* contemplated by the act under which it was filed. The Revenue Acts of 1916 and 1917 provided for the time and place of filing returns in identical language (Sec. 13(b)(1)) and specified:

> *The return* shall be made to the collector of the district in which is located the principal office of the corporatiaon, company, or association, where are kept its books of account and other data from which *the return* is prepared. * * * (Italics ours.)

Again we find a definite article and a definite subject described, viz, *the return*. The language of the sections referred to does not describe *any return* or *many returns*, but one special return which is to be filed in one special place at or within a specified time. The taxpayer complied with the law when it filed returns on March 15, 1918, and the Commissioner had five years from that time within which to assess and collect the taxes thereon. This period was extended to March 5, 1924, by express waivers being filed by the taxpayer and approved by the Commissioner.

The taxpayer's Exhibit 5 can not be considered a return within the contemplation of the Revenue Act of 1921, because (1) the only return contemplated by the act had been filed on March 15, 1918; (2) it was not intended to be anything but evidence by the taxpayer; (3) it was not filed in the office of the collector of the district in which the principal office of the corporation is located; and, (4) if it could be a proper amendment and was properly filed, it would operate to amend or correct *nunc pro tunc* as of the date of filing of the original. Had we the power to hold that the filing of an amended return would extend the statute of limitations for five years, such a ruling would tend to discourage the conscientious taxpayer who might desire to correct errors made in the original and offer an obstacle to honesty in dealing with the Government. To accept the contention of the Commissioner that the filing of an amended return creates an exception to the provisions of sections 250(d) of the act of 1921 and 277(a)(2) of the act of 1924, would place this Board in the position of legislating. This it can not do *Amy* v. *City of Watertown*, 130 U. S. 301; *Bank* v. *Kissane*, 32 Fed. 429.

The exhibit can not be considered a waiver because it has been consistently held by the courts of this land that waiver is the intentional relinquishment of a known right with both the acknowledgment of its existence and an intention to relinquish it *Lehigh Valley R. Co.* v. *Ins. Co.*, 172 Fed. 364, 97 C. C. A. 62; *Portland & F. R. Co.* v. *Spillman*, 23 Or. 587, 32 Pac. 689; *Bennecke* v. *Ins. Co.*, 105 U. S. 359; *Cal. Southern Hotel Co.* v. *Callendar*, 94 Cal. 120, 29 Pac. 859; see, also, 8 Words and Phrases (1st Series) 7379; 4 Words and Phrases (2nd Series) 1229, and there is no evidence in this appeal to show any such intention on the part of the taxpayer.

In view of these considerations the special defense of the Commissioner must fall. Therefore, we hold that the taxpayer is pro-

tected by the statute of limitations, the liability determined 1 · the Commissioner was barred on July 21, 1924, and the deficiency for the year 1917 is disallowed.