KING AMUSEMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17921.   Promulgated February 25, 1929.

*Frederick L. Pearce, Esq.*, for the petitioner.
*E. W. Shinn, Esq.*, for the respondent.

### OPINION.

LITTLETON : The issue is whether the amount of $50,000 paid by the petitioner to Finsterwald and King in consideration for their becoming guarantors for the petitioner in the fulfillment of the terms and conditions of a certain lease constitutes an allowable deduction from gross income under the provisions of section 234 (a) (1), which reads as follows:

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity.

The facts are not in dispute. In brief they show that when in 1920 the petitioner sought to renew the lease on the premises which it was then occupying, it became necessary for the petitioner to pay $50,000 in order to secure the renewal lease. At that time the existing or old lease had six years yet to run, and the petitioner, by the renewal lease, secured no modification of the old lease. The payments in question were not made to the lessor, but were made to two individuals in consideration of their becoming guarantors for the fulfillment of the lease contract by the petitioner as lessee. As such it was not a bonus paid of the character we find which is often referred to as additional rent or a part of the rent paid in advance. It was, however, as necessary to the securing of the renewal as if it had been a bonus or price specified in the lease, since the reasonable deduction to be drawn from the facts is that the renewal could not have been obtained without making this expenditure.

The petitioner's argument in support of the deduction is directed largely to the proposition that this was an expense prudently incurred, proximate to the business and reasonably necessary and, therefore, it must be classified as a deductible expense in the nature of insurance premiums or as compensation for services rendered. What the petitioner says is a true statement of what occurred, but we can not agree with the ultimate conclusion reached, namely, that this is

an ordinary and necessary expense deductible under the provisions of section 234 (a) (1), *supra; J. Alland & Bro.*, 1 B. T. A. 631; 28 Fed. (2d) 792. The line to be drawn between capital and expense items is often difficult to define and must be decided upon the basis of the facts in a particular case, but we fail to see where the prudence with which the expense was incurred, its proximity to the business, and its reasonable necessity assist us in making a distinction between the two classes of items. These considerations would apply equally to an outlay of money, whether it be for something which is to contribute to the income-producing activities over a period of years or whether it be for something from which the benefit is applicable only to the year in which the expenditure was made, and therefore chargeable only to such year's operations. Nor does the fact that the expenditure was for salary in the form of compensation for services rendered or for insurance, necessarily rob it of its capital nature. Certainly, where a taxpayer constructs a building with its own labor, paying salaries and wages for such work and also paying for insurance the benefits from which are applicable only to the period of construction, it could hardly be said that those expenditures are not of a capital nature. In effect, they are expenditures made in the acquisition of a building, a capital asset, for the purpose of producing income over a period of years and, therefore, would not be chargeable against income for a single year. Then, too, organization expenses in connection with the formation of a corporation may include compensation for services rendered, but they are not allowable deductions from gross income. See *Goodell-Pratt Co.*, 3 B. T. A. 30; *Columbia Theatre Co.*, 3 B. T. A. 622; *First National Bank of St. Louis*, 3 B. T. A. 807. As we view the situation, the expenditure was made in connection with the acquisition of a capital asset, the new lease, and was as much a part of the cost as if it had been paid to an agent in an outright acquisition of a lease. In other words it was an amount paid in order to acquire the lease, and we do not think it material that it was not paid to the party from whom the lease was obtained. The benefits from such expenditure were not confined to the year when made, but would extend to the end of the renewal lease. It may well be that some benefits from making this expenditure in 1920 accrued to the petitioner at that time and were not confined to the period of the renewal lease, since the petitioner was thus assured that it could continue its operations at that place for 16 years instead of only 6 years and, consequently, was enabled to make plans for the future in a manner which it could not have done without the renewal lease, but this is no argument for saying that this was an ordinary and necessary expense applicable only to the year 1920. On the whole, we are satisfied that this was a capital expenditure and, accordingly, the Commissioner's action in so treating it is sustained.

What part of it, if any, might be deductible in 1920 we have no evidence from which we can determine.

*Judgment will be entered for the respondent.*