SAKS & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21258.   Promulgated October 3, 1930.

*Joseph R. Little, Esq.,* for the petitioner.
*Harry LeRoy Jones, Esq.,* for the respondent.

OPINION.

SEAWELL: What the petitioner contends with respect to the expenditure of $200,000 is that this represents an ordinary and necessary expense of the petitioner for 1920 and therefore should be allowed as a deduction in its entirety in that year, or, in the alternative, that a pro rata part of the amount be allowed as a deduction in 1920 on the basis of a spread of the deduction from March 16, 1920, the date of the execution of the lease, to October 1, 1922, the date when the lease became effective.

The position taken by the petitioner is sought to be justified largely by a process of elimination; that is, it is sought to be shown that no capital asset was acquired through the expenditure, since, it is claimed, it was in no sense paid for the acquisition of the lease or as additional rental, but rather as reimbursement for prospective losses of the lessor, and therefore it must be an expense item. But is it correct to say that the petitioner acquired nothing of a capital nature through the payment in question? We think not. The petitioner introduced witnesses to show that the rental to be paid after the beginning of the term of the lease was agreed upon prior to the consideration of this item, that the rental agreed upon was considered fair and reasonable exclusive of this payment, and that the petitioner acquired no rights under the lease through the payment. But we think it undeniable that the petitioner did acquire something through the payment and that this "something" was inseparably tied up with the lease itself. The amount paid was not trivial, but substantial, and, even though the other terms of the lease may have been agreed upon prior to a consideration of the prospective losses which the lessor might suffer, we have no doubt that the lease would not have been executed without the payment. To accept the petitioner's reasoning would be tantamount to saying that the lessor was willing or was bound to execute the lease without the payment and that the lessee (the petitioner) was unwilling to see the lessor suffer large losses and therefore magnanimously made this payment. Such philanthropic actions are not ordinarily to be imputed to the parties to business transactions such as we have here, where they are dealing at arm's length. Nor do we think it material that the amount was agreed to be paid because of prospective losses which the lessor might suffer. What arguments might be advanced in opposition to the taxability of the item to the lessor are not matters with which we are now concerned. Apparently, these prospective losses were merely the measure of the amount to be paid by the lessee (petitioner) and were in no sense the petitioner's losses.

In any way we view the situation we are of the opinion that the petitioner did acquire rights under the lease through the expenditure in question and that benefits should reasonably be considered as flowing therefrom over the term of the lease. The fact that the lease was not presently effective in so far as occupancy was concerned or when its term would begin does not seem to us material. The lease itself was acquired in 1920; it was then that the petitioner acquired the right to the future use and occupancy of certain property. The fact that it could not begin the enjoyment of the rights acquired thereunder until 1922 would not alter the fact that something had been acquired prior thereto. On the whole, we are of the opinion that the Commissioner was correct in denying any deduction on account of the expenditure in 1920. While some benefits might be said to have accrued prior to October 1, 1922, we are not convinced that they are of such consequence that would justify spreading such expenditures over any other term than the term of the lease. *J. Alland & Bro., Inc.*, 1 B. T. A. 631 (affd., *J. Alland & Bro., Inc.*, v. *United States*, 28 Fed. (2d) 792); *Columbia Theatre Co.*, 3 B. T. A. 622; and *King Amusement Co.*, 15 B. T. A. 566. The fact that the Commissioner heretofore took a different view of the deduction allowable is of course not material. *James Couzens*, 11 B. T. A. 1040.

With respect to the second issue presented, namely, the treatment to be accorded an amount of $10,000 paid by the petitioner to its general counsel for legal services rendered during the year, we are of the opinion that the item in question constituted an ordinary and necessary expense for the year when paid. That legal expenses incident to the operation of a business constitute an ordinary and necessary expense is too well established to require a citation of authority in support thereof and we do not think this petitioner should be denied the benefit of the deduction in the year when paid merely because there are included therein some services which, when standing alone, might more properly be capitalized. The same might be said in almost all instances where legal services are availed of for guidance in the conduct of business affairs, since the benefits from legal advice are often not confined to the year in which given. When we consider the necessity for, and the recurring nature of, such expenses, as well as the impracticability, if not impossibility, of segregating capital and expense items in such payments, we are unwilling to say that the petitioner is not entitled to the deduction of $10,000 paid for 1920.

The final question involves the running of the statute of limitations with respect to the collection of the part of the original assessment which was not paid in 1921. A return was filed for 1920 on

March 14, 1921, which showed a tax due of $268,394.64 and a completed or amended return was filed on June 14, 1921, which showed. a tax due of $331,738.90. Apparently the former amount was not assessed, but the latter amount was assessed on October 19, 1921. The first return was in every sense complete in itself and differed from the second return only as to the one item which was involved in our first issue. It was therefore an original return and not a tentative return as those terms are ordinarily understood, and the statute of limitations must be considered as running from March 14, 1921. *National Refining Co. of Ohio*, 1 B. T. A. 236, and *Lancaster Lens Co.*, 10 B. T. A. 1153. On February 4, 1926, or well within the statutory period applicable to the assessment and collection of tax under the return as filed, a waiver was executed consenting to the assessment of any tax due for 1920 on or before December 31, 1926. On September 14, 1926, the Commissioner notified the petitioner of the determination of a deficiency of $20,781.56 (that is, that the total tax assessable for 1920 was $352,520.46 instead of $331,738.90 as assessed in 1921) and a petition was duly filed with the Board with respect to such deficiency. On account of the assessment of $331,738.90 petitioner made payment of $228,006.85 and withheld payment of $103,732.05. Of the foregoing unpaid amount, $40,387.79 is the equivalent of an overassessment which the Commissioner had determined for 1917 and the parties seem agreed that this amount was properly satisfied. A claim in abatement was filed on account of the remainder or $63,344.26 and this was outstanding at the time the waiver was filed on February 4, 1926. In November and December, 1926, and in January, 1927, the Commissioner credited $55,607.74 against the amount covered by the abatement claim on account of overassessments which had been determined for other years. This left an unpaid balance of $7,736.52, which was paid by the petitioner under protest on August 7, 1929.

Now, what the petitioner contends is that, since the credits and the payment of cash were made more than five years after the statute began to run on account of the original assessment, such payments were made after the statutory period for collection had run and therefore are refundable, or, rather, should be considered in determining whether there is a deficiency or overpayment under this. proceeding. We, however, are unable to agree with the position taken by the petitioner. In the first place, in so far as the extent to which the amount of $63,344.26 was satisfied through the crediting of overpayments for other years, this is an administrative matter over which we have no jurisdiction. Besides, the years for which the overassessments were made are not before us and we know nothing concerning their correctness or refundability beyond the

fact that they were used by the Commissioner in partial satisfaction of this outstanding obligation. Cf. *Dickerman & Englis, Inc.*, 5 B. T. A. 633; *Lester H. Cranston et al., Executors*, 5 B. T. A. 993; *Dona Meyerhoff*, 11 B. T. A. 529; *John W. Anderson*, 12 B. T. A. 1111; and *T. B. Noble et al.*, 12 B. T. A. 1419. With respect to the payment made in 1929, we are of the opinion that authority then existed for its collection on account of the waiver filed on February 4, 1926. At that time the original statutory period for the assessment and collection of any tax found due under the return for 1920 had not expired and the waiver extended the time for making assessment to December 31, 1926. It is true that this waiver made no reference to an extension of time for collection, but we have heretofore held that an extension of time for assessment also extends the time for collection even though collection is not mentioned in the consent filed. *Farmers' Cooperative Milk Co., Inc.*, 9 B. T. A. 696. See also *Charles H. Stange v. United States*, 68 Ct. Cls. 395; certiorari granted, 281 U. S. 707. It is also true that the assessment with which we are concerned was made long prior to the execution of the waiver, but this is similar to the situation existing in *Friend M. Aiken*, 10 B. T. A. 553 (affd., *Aiken v. Commissioner*, 35 Fed. (2d) 620), wherein the Board said:

We are of opinion that the rule laid down in *Joy Floral Co. v. Commissioner, supra*, is applicable here. It is true that in that case no assessment had been made prior to the date of the agreement for the extension of the statutory period, and that in this proceeding, the assessments had been made nearly a year prior to the date of the agreements. This fact we do not deem material. Although at the date the assessments were made, all remedies were barred, the liability was still in existence. Under these circumstances, petitioner and respondent agreed to "waive the time prescribed by law for making any assessment" and that such period should continue until December 31, 1926, with further provisions relative to notice of deficiency and appeal to the Board. It is clear that these agreements would have validated any assessments made after their effective date and prior to the expiration of the agreed period, and we perceive no reason why they did not give equal validity to the assessments which were then in existence. The liability for the taxes remained and they could have been reassessed. This would have been a duplication of what had been done and obviously a work of supererogation. All that was necessary to revive the remedies was an agreement made pursuant to section 278 (c). Such an agreement was executed and since the effect of the agreement was to revive the remedies, it follows that the prior assessments, although dormant, were revived and made effective by the agreements.

See also *Sugar Run Coal Mining Co.*, 11 B. T. A. 587. The *Aiken* case differs from the case at bar principally in that the waiver was there considered by the Board sufficient to revive or make valid for collection an assessment which was made when no authority existed for such assessment, whereas in the case at bar the assessment was not only timely made, but also at the date of the execution of the waiver

the original statutory period for assessment and collection had not run. Such a situation is not parallel to that existing in *Bowers* v. *New York & Albany Lighterage Co.*, 273 U. S. 346; and *Russell* v. *United States*, 278 U. S. 181, where no waivers were involved. Cf. *Washington Coal & Coke Co.* v. *Heiner*, 42 Fed. (2d) 68; *Roy & Titcomb* v. *United States*, 69 Ct. Cls. 614; and *Brown & Sons Lumber Co.* v. *Commissioner*, 38 Fed. (2d) 425.

*Judgment will be entered under Rule 50.*