CORN PRODUCTS REFINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24374. Promulgated March 9, 1931.

*Laurence Graves, Esq., George A. O'Donohue, Esq.*, and *Frank H. Hall, Esq.*, for the petitioner.

*F. R. Shearer, Esq.*, for the respondent.

608

610

616

OPINION.

TRAMMELL: This proceeding has been limited to questions involving the expiration of the periods of limitation. On this question three issues are presented: (1) with respect to the deficiency of $2,299,-428.87 for 1918, (2) with respect to the amount of $1,044,024.10 for 1918, (3) with respect to the amount of $350,587.38 for 1919.

The $1,044,024.10 was collected on October 27, 1925.

With respect to the deficiency for 1918 still unpaid, four waivers were signed by the taxpayer, the first dated August 14, 1924, which was filed August 15, 1924, and duly signed by the Commissioner. This waiver provided for an extension of time for the " determination, assessment and collection " of taxes for 1918 and extended the period for one year after the expiration of the statutory period. The statute would have expired on September 15, 1924, if not extended by proper consent in writing.

The second consent in writing with regard to taxes for 1918 was filed by the taxpayer on August 7, 1925, and filed with the Commissioner on August 10, 1925, and was thereafter duly signed for and on behalf of the Commissioner. This consent extended the time for the " assessment " of any taxes due for the year 1918 to December 31, 1925, unless a notice of deficiency was sent within that time. Under the decision of the Supreme Court in the case of *Stange* v. *United States*, 282 U. S. 270, these two waivers were valid for the assessment and collection of the 1918 taxes and extended the time for assessment and collection until December 31, 1925.

A third so-called waiver was filed by the taxpayer on October 22, 1925, with the Commissioner, but was not signed by or in behalf of the Commissioner until February 26, 1930, after the notice of deficiency had been mailed and long after this proceeding had been instituted.

A fourth so-called consent in writing was filed by the taxpayer on December 7, 1926, which was not signed by or in behalf of the Commissioner until June 24, 1930.

The Commissioner takes the position that the mailing of the deficiency notice on July 2, 1924, extended the period for 60 days thereafter and that this 60 days should be added to the period as extended by the so-called consents in writing subsequently executed. In short, the respondent contends that the waiver signed by the taxpayer on August 7, 1925, instead of extending the time to December 31, 1925, as therein provided, actually extended the period until 60 days thereafter and thus beyond the date of the passage of the 1926 Act, so that the collection would not be barred by section 278 (a) of that act. This so-called notice of deficiency was entirely disregarded by the Commissioner and treated by him as a 30-day letter. Subsequent hearings were had and another notice of deficiency was mailed based upon which this proceeding was instituted. The petitioner at the request of the Bureau disregarded the deficiency notice of July, 1924. But in any event we do not think that this deficiency notice, however it may be regarded, has the effect of extending the time specifically set forth in a subsequent waiver. The

waiver of August 7, 1925, specifically provided for a time limit. It may well be that this notice extended the time for assessment and collection for 60 days from the time it was mailed, but this fact becomes immaterial and unimportant with respect to those waivers filed after the expiration of this 60-day period, when those waivers contained a definite and specific expiration date. The August 7, 1925, waiver, by its terms, extended the time to December 31, 1925, and provided that "It shall then expire" unless in the meantime notice of deficiency were mailed, which was not done. This waiver, therefore, extended the time only to December 31, 1925, and the 60-day period should not be added thereto. No notice of deficiency was mailed within the time provided in this waiver and there is no statutory authority for adding 60 days to the time agreed upon in the waiver where the Commissioner does not act within the period provided in the waiver.

As to the effect of this first deficiency notice upon our jurisdiction, we think that in any event we have jurisdiction to hear and decide this proceeding based upon the deficiency notice mailed after the passage of the 1926 Act. Only one letter was mailed after that date, and we therefore have jurisdiction of this cause. See *Gilbert B. Goff*, 18 B. T. A. 283; *J. W. Bowman*, 8 B. T. A. 526.

Since the notice of deficiency mailed under the 1924 Act did not have the effect of extending by 60 days the period for assessment and collection definitely agreed to in writing after the expiration of the 60-day period, the question then presents itself as to whether the consents in writing extended the time for the assessment and collection of the taxes for 1918 up until such time as the notice of deficiency was mailed under the 1926 Act, that is, December 20, 1926.

The first two consents in writing, those dated August 14, 1924, and August 7, 1925, being valid, it is only necessary to discuss the waiver signed by the taxpayer October 22, 1925, and the fourth waiver, dated, December 27, 1926, which were not signed by the Commissioner until long after this proceeding had been instituted, and after the statutory period as extended by the previous waivers had long expired. We do not think it necessary to discuss the contention of the petitioner that the period of limitations began to run on the filing of the tentative return instead of on the filing of the original return. This question has been decided by the United States Supreme Court adversely to the contention of the petitioner in the case of *Florsheim Brothers Dry Goods Co.* v. *United States*, 280 U. S. 453. But as we view the situation the statute had expired in any event before the mailing of the notice of deficiency from which this appeal was instituted, unless the consent in writing dated October 22, 1925, or the one dated December 7, 1926, was sufficient to extend the time. A

portion of the deficiency involved herein for 1918 was assessed in 1919, based upon the tentative return filed on March 15, 1919, and the balance of the deficiency asserted for 1918 was assessed on July 25, 1923. In other words, all the deficiency now asserted for 1918 was assessed prior to the passage of the 1924 Revenue Act and the six years for collection has no application thereto provided the collection was barred at the time of the passage of the 1926 Act (Section 278 (e)). Unless the period for collection was extended by consents in writing as provided in the statute the collections cannot be made. All the waivers here involved referred to collections, except the one filed August 10, 1925, for 1918, which referred only to assessment, but under the decision of the United States Supreme Court, in the case of *Stange* v. *United States*, 282 U. S. 270, this is of no importance. Since the so-called waiver of October 22, 1925, was not signed by the Commissioner until after the expiration of the period of limitations and until long after the institution of this proceeding and the so-called waiver dated December 7, 1925, was similarly not signed by the Commissioner or by any one in his behalf until long after the period of limitations had expired, and not until June 24, 1930, the question arises as to whether they are effective consents in writing as provided in the statute. The real question thus presented is whether the statute requires that waivers be signed by both the Commissioner and the taxpayer, or whether they are effective when signed by the taxpayer alone, and the statute of limitations expires before the Commissioner signs, or, stated differently, conceding that a waiver signed by the taxpayer alone is not effective, then when the Commissioner signs it, does it become fully effective and have the effect of extending the period though barred when during the interval before the Commissioner signs the waiver the Revenue Acts of 1926 and 1928 are enacted.

We have held in the case of *Melville W. Thompson*, 18 B. T. A. 1192, and *George U. Hind*, 18 B. T. A. 96, that where a written instrument, which was executed by the taxpayer and not by the Commissioner, consenting to a later collection of tax which had been assessed prior to the effective date of the Revenue Act of 1924, was not a valid consent in writing as required by law and did not operate to extend the period for collection. The statute provides for a consent in writing of both the taxpayer and the Commissioner. While it may be true that it is not necessary that the same instrument be signed by both the Commissioner and the taxpayer and that the consent of the Commissioner might be evidenced by some instrument in writing other than that signed by the taxpayer, we have no evidence before us that the Commissioner ever executed any instrument, letter or any other document which would have the effect of expressing his consent in writing to the subsequent collection of the deficiency of 1918.

A consent in writing is not shown by subsequent acts, for the statute requires that the consent be in writing not by acts, and we do not think that the principle of estoppel should be invoked to take the place of what is required by the statute, that is, an instrument in writing in which the consent of both parties is expressed. While in the *Stange* case, *supra*, and the case of *Aiken* v. *Commissioner*, 282 U. S. 277, the Supreme Court said that a waiver was not a contract and that the requirement of the Commissioner's signature was for purely administrative purposes and not to convert into a contract what is essentially a unilateral waiver of a defense by the taxpayer, the Court did not say that the signature of the Commissioner was not required. While in both of those cases the waivers were signed by the Commissioner some time after the taxpayer had signed them, it was not necessary for the Court to decide on which date the waiver became effective. In any event, under the facts in those cases the waivers would have been effective even if both the taxpayer and the Commissioner had signed at the later date. The Court, however, did refer to what the parties (both the taxpayer and the Commissioner) intended by the written instrument and referred to the requirement for both the Commissioner and the taxpayer to sign it. In the *Aiken* case, *supra*, the Court said:

The *requirement* in section 250 (d) of the Act that the Commissioner *sign* the consent was inserted to meet exigencies of administration and not as a grant of authority to contract for waivers.

\*   \*   \*   \*   \*   \*   \*

While section 250 (d) first *specified that a waiver be in writing and signed by the Commissioner* there is nothing in that section that invalidated waivers made prior to its enactment   \*   \*   \*.   (Italics supplied.)

In the *Stange* case, *supra*, the Court said:

\*   \*   \*   the *provision requiring* the Commissioner's signature was intended for purely administrative purposes   \*   \*   \*.   (Italics supplied.)

The fact that the signature of the Commissioner was required for purely administrative purposes and not to convert a consent into a contract, to our mind seems not material, if the signature of the Commissioner was in fact required. Both the *Stange* and *Aiken* cases cited as authority the case of *Florsheim Bros. Dry Goods Co.* v. *United States*, 280 U. S. 453, as authority for the statement that the waivers were not contracts and that the requirement as to the signature of the Commissioner was for administrative purposes. But the Court in that case said:

It is also urged that, unless a contract was intended there is no reason why the consent of the Commissioner should have been required. But an otherwise plain meaning should not be distorted merely for the sake of finding a purpose for the administrative requirement. If a reason must be found, it exists in the

general desirability of the requirement as an administrative matter. It serves to keep the Commissioner in closer touch with the matters he is charged to administer. It avoids claims of improvident execution of waivers and unauthorized exactions by subordinates of the department * * * and it provides a formal procedure which is generally desirable * * *.

* * * section 278 (c) [1926 Act] re-enacted the provision as to extension of time by consent of the Commissioner and the taxpayer and constituted the sole statutory authority for the waiver of the period of limitation for taxes under the 1918 and 1921 Acts. It unquestionably applied to waivers thereafter to be executed * * *.

Clearly the Court in the *Florsheim* case did not hold that it was not necessary for the Commissioner to sign consents in writing as specifically required by the statute, and the *Stange* and *Aiken* cases merely relied on that case and did not in any way modify it. While the requirement as to the Commissioner's signature was for administrative reasons, still it was a statutory requirement and is not to be ignored. Many of the provisions of the revenue acts are for administrative purposes. If a thing is required for administrative reasons we are not warranted in saying that it is not required at all. The provision as to the assessment of taxes by the Commissioner, the making of returns by taxpayers, the proceedings before the Board and other provisions affecting the rights and duties of taxpayers and the Government might be said to be requirements for administrative reasons. The filing of a claim for refund and the rejection thereof or failure to act thereon for a certain period is an administrative requirement which the Supreme Court has not ignored, however formal the required action was, because it was an administrative requirement. See *Rock Island A. & L. R. Co.* v. *United States*, 254 U. S. 141.

In our opinion, the agreement in writing as to the extension of time for the assessment and collection of taxes is not essentially different in character, that is, whether it is for administrative purposes or not, from the compromise agreement authorized in the revenue acts. In other words, if the provision relating to the Commissioner's signature is merely for administrative purposes in one case, it would seem that the requirement for the Secretary's approval in the case of compromise agreements would also be an administrative requirement. The Supreme Court in the case of *Botany Worsted Mills* v. *United States*, 278 U. S. 282, in referring to the compromise provision of the statute, assigned substantially the same reason for this provision as it assigned for the *requirement* for the signature of the Commissioner in the case of waivers in the *Florsheim* case, *supra*, relied on in the *Stange*, *Aiken* cases, *supra*, and *Brown Lumber Co.*, 282 U. S. 283, that Congress did not intend to intrust the final settlement of such matters to the informal action of subordinate officials. Apparently the Supreme Court's view was that Congress did not in-

tend matters of such public interest and of such consequence both to the Government and taxpayer to be determined by informal action at all, as Congress prescribed the procedure to be followed.

Section 3239 authorizes the Commissioner of Internal Revenue to compromise tax claims before suit with the advice and consent of the Secretary of the Treasury and requires an opinion from the Solicitor of Internal Revenue.. In the case of *Botany Worsted Mills* v. *United States, supra*, there was an informal agreement of compromise which was not made with the formalities required by the statute. The Botany Worsted Mills contended that it was not bound by the agreement for this reason. In that case the Solicitor General, in his brief, stated:

That the question whether such an informal adjustment of taxes as was made in this case is binding on the taxpayer, is submitted for decision in deference to the opinion of the Court of Claims and the importance of the question—but no argument is made in support of the Government's previous contention that the Mills was estopped from questioning the settlement. And, on the contrary, it is stated that, "before and since the date of the alleged settlement in this case the Commissioner has evidently proceeded on the theory that no adjustment of a tax controversy between representatives of the Bureau of Internal Revenue and a taxpayer is binding unless made with the formalities and with the approval of the officials prescribed by statute".

The Supreme Court said:

Independently of these concessions, we are of the opinion that the informal settlement made in this case did not constitute a binding agreement. Section 3239 authorized the Commissioner of Internal Revenue to compromise tax claims before suit with the advice and consent of the Secretary of the Treasury * * *. Here the attempted settlement was made by subordinate officials in the Bureau of Internal Revenue. And although it may have been ratified by the Commissioner in making additional assessment placed thereon, it does not appear that it was assented to by the Secretary, or that the opinion of the Solicitor was filed in the Commissioner's office.

We think that Congress intended by the statute to prescribe the exclusive method by which taxes could be compromised * * * and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode * * *.

The Court held that the Mills was not precluded by the settlement, as contended by the Commissioner, from recovering any portion of the tax to which it may otherwise have been entitled, and that the taxpayer was not estopped by its course of conduct to rely on the fact that the provisions of the statute had not been complied with.

The filing of returns is an administrative requirement and the requirement that in the absence of an agreement between affiliated corporations as to how the tax shall be assessed, the statute provides that it must be assessed according to income, etc., is purely for

administrative purposes, yet in *Essex Coal Co.* v. *Commissioner*, the Circuit Court of Appeals in 39 Fed. (2d) 892, said that this statute had to be met and that the taxpayer was not estopped by its course of conduct.

We know of no rule of statutory construction to the effect that because an act *required* by statute is for administrative purposes it is not *required* at all. The real question is whether the statute is directory or mandatory, not whether it is administrative or not. The fact that the requirement of the Commissioner's signature is for administrative purposes has no relation whatever as to whether it is mandatory or directory. When a particular provision of a statute relates to some immaterial matter as to which compliance with the statute is a matter of convenience rather than substance, it may be said to be directory only and not mandatory, but in the case of waivers, while the Commissioner's signature is required for administrative purposes, there is nothing to indicate that it was not a material matter and that Congress intended that the provision should be complied with to the same extent that the approval of the Secretary was required in the case of compromises. This is indicated by the language of the *Florsheim case*, where the Court discussed the reasons for the *requirement*.

We think that Congress intended to require the signature of both the Commissioner and the taxpayer in the case of waivers. The language of the 1924, 1926, and 1928 Acts refers to consents in writing of " both " the Commissioner and the taxpayer. Congress must have recognized that prior to the 1921 Act, when provision was first made for the extension of time for the assessment and collection of taxes by consents in writing of the Commissioner and the taxpayer, the Commissioner could legally accept waivers signed only by the taxpayer; that the Commissioner had, as a matter of practice, been accepting such waivers signed by the taxpayer under all of the income tax acts previous to the 1921 Act. See S. O. 60, C. B. 3, p. 295, as to waivers under Acts 1909 to 1913; articles 38, 50, and 230 of Regulations 33, Revised, under the 1916 Act and that act as amended and O. D. 234, C. B. 1, p. 252, as to waivers under the 1918 Act. Waivers signed by taxpayers previous to the 1921 Act were perfectly good as common law waivers, as said by the Supreme Court in the *Stange* case, *supra*. At common law waivers were not required to be signed by both the Commissioner and the taxpayer, but they were recognized as good and effective. The Revenue Act of 1921, section 250 (d), changed the common law rule on the subject of waivers to require the consent in writing of both the Commissioner and the taxpayer, and this provision has been continued in all subsequent acts. If Congress had intended that it was not necessary for both the Commissioner and the taxpayer to sign waivers, the question

arises as to why the provision was put in the statute when before that time they were good when signed only by the taxpayer. After all is said on the question of whether a statutory provision is directory or mandatory, the true test is the intention of the legislature. See *Marx* v. *Hawthorn*, 148 U. S. 172; *Lyon* v. *Alley*, 130 U. S. 177.

In this respect it is of some significance that the Revenue Act of 1921 for the first time prescribed a definite period of limitation for the collection of taxes by suit or otherwise. Prior to the Revenue Act of 1921 there was no limitation upon the collection of taxes by suit, the limitation applying merely to assessment and collection by administrative processes. This being true and the Government, in any event, having an unlimited time to collect by suit if necessary, it was doubtless considered by Congress sufficient if the taxpayer waived the period for assessment or collection through administrative means, the Commissioner, in any event, having the right to collect, but when the 1921 Act contained a provision limiting absolutely the period for assessment and collection through any process, Congress saw fit to change by statutory provision the common law rule then in effect with respect to the extension of time by waiver signed by the taxpayer alone and provided that the period could be extended by a consent in writing of both the Commissioner and the taxpayer. It seems clear that the purpose of the legislation was to abrogate or modify the common law rule with respect to waivers. The United States Supreme Court, in the case of *United States* v. *Matthews*, 173 U. S. 381, said: " Where the purpose of the legislature to abrogate or modify the common law rule is clear, the statute must be executed according to its terms," and it is a rule long recognized by the United States Supreme Court that statutes in abrogation of the common law or which change the common law are to be strictly construed. *McCool* v. *Smith*, 1 Black, 459; *Brown* v. *Bairy*, 3 Dal. 365; *Ross* v. *Jones*, 22 Wall. 576; *Nudd* v. *Burrows*, 91 U. S. 426; *Meister* v. *Moore*, 96 U. S. 76; *Shaw* v. *Northern Pacific R. R. Co.*, 101 U. S. 557; *Johnson* v. *Southern Pacific*, 196 U. S. 1; *Thompson* v. *Thompson*, 218 U. S. 611, and other cases.

It is also a rule of construction so well established that it is not necessary to cite authorities to support it, that every phrase or word of the statute is to be given effect if possible. See *California* v. *Deseret Water etc. Co.*, 243 U. S. 415.

On the question as to whether the provision with respect to consents in writing of both the Commissioner and the taxpayer are directory or mandatory, it is to be observed that in all of the revenue acts, beginning with the 1921 Act, the provisions relating to waivers are placed in the acts as exceptions to the general rule of the application of the statute of limitations. The period of limitations

for the assessment and collection of taxes is preceded by the language " except as provided by," the language relating to waivers contained in the following section. This being true, the statutory rule of construction applicable to exceptions and provisos in the statute should be applied, that is, they should be strictly complied with. See *United States* v. *Dickson*, 15 Pet. 141, and *State* v. *State Board of Assessors*, 25 Atl. 327.

That the provisions relating to the consents in writing are mandatory and not directory merely is clearly indicated by the provisions of sections 277 and 278 of the Revenue Acts of 1924, 1926, and 1928 as amended. The authority of the Commissioner to proceed to collect the tax depends upon the proper execution of a waiver. The Act requires that certain things be done before the power of the Commissioner can be exercised. We think that an instrument of such significance and importance which so affects the substantial rights of both the Government and taxpayer and which is necessary in order to enable the Commissioner to perform his public duty of collecting taxes, should be in the form prescribed by the statute and that the statutory provisions relating thereto are mandatory. We think that any doubt as to whether the provision is mandatory or directory is removed by the Supreme Court. Whenever it referred to the execution of waivers it referred to the *requirement* of the Commissioner's signature.

We must also consider the rule of statutory construction laid down by the Supreme Court with respect to the statutes of limitations which are affected by waivers. The rule is now clearly established that statutes of limitations should be liberally construed in favor of the taxpayer. *United States* v. *Updike*, 281 U. S. 489; *Bowers* v. *New York & Albany Lighterage Co.*, 273 U. S. 346. Giving effect to this statutory requirement, the waivers were not effective until the Commissioner or some one in his behalf signed them.

This leaves for consideration the question as to whether, when the waivers were signed after the period of limitation had expired and after the Revenue Act of 1926 and also the 1928 Act had been enacted, they are effective as in the cases of waivers under prior revenue acts, as were involved in the *Stange* and *Aiken* cases. The 1926 Act contains section 278 (e), which provides that that section 278 (the section providing for waivers) shall not authorize the assessment or collection of a tax if at the time of the enactment of the 1926 Act *assessment or collection* was barred by the statutory period of limitations properly applicable unless *prior* to the enactment of that act the Commissioner and the taxpayer agreed in writing thereto. The Commissioner and the taxpayer did not so agree, prior to the passage of the 1926 Act, to extend the time until or subsequent to the passage

of that Act. On that date, if the waiver of August 22, 1925, was not effective in the absence of the Commissioner's signature, the tax was barred. Under such circumstances we have held that the statute of limitation bars the collection. *Jacobs Bros.*, 19 B. T. A. 315; *James & Holmstrom Piano Co.*, 19 B. T. A. 322; *Wetherell Bros.* v. *White*, 46 Fed. (2d) 83. We find nothing in the recent cases of *Stange* or *Aiken*, or the case of *Burnet* v. *Chicago Ry. Equipment Co.*, 282 U. S. 295, or the case of *Brown & Sons Lumber Co.* v. *Burnet*, 282 U. S. 283, to the contrary. The Court expressly refrained from deciding this question. But in this case it is not necessary to rely on the provisions of the Revenue Act of 1926. The waiver was not signed by the Commissioner until after the passage of the Revenue Act of 1928. If the signature of the Commissioner is required at all the waiver is not complete and effective until his signature is put on it. We think, then, that whether it is effective depends upon the Revenue Act of 1928. That act, in so far as it is pertinent, is as follows:

(b) Section 278 of the Revenue Act of 1926 is further amended by adding at the end thereof a new subdivision to read as follows:

"(f) Any agreement which would be within the provisions of subdivision (c) or (d) of this section but for the fact that it was executed after the expiration of the period of limitation extended by such agreement, shall be valid and effective according to its terms if entered into after the enactment of the Revenue Act of 1928 and before January 1, 1929." [Sec. 506.]

The provision of the 1928 Act relative to waivers uses the language " where before the expiration of the time prescribed in section 277 * * * both the Commissioner and the taxpayer have consented in writing * * *." Regardless of the law as to waivers prior to the passage of the 1928 Act as laid down by the Supreme Court, under the 1928 Act a waiver was not valid and effective if executed after the passage of that act after the expiration of the statute of limitations unless executed before January 1, 1929. When the Commissioner signed the waiver after the passage of the 1928 Act, his signature being required, it is governed by that act to the same extent as if both parties had signed it after the 1928 Act. When two things are required to be done to give effect to an instrument, it is clearly not effective until both are done. It must follow that the collection of the tax for 1918 is now barred.

The second issue relates to that portion of the tax for 1918 which the petitioner claims was erroneously collected by threat of distraint after the expiration of the five-year period provided in the Revenue Act of 1918 and subsequent acts. This amount of $1,044,024.10 was assessed by the Commissioner upon the petitioner's tenta-

tive return for 1918. The tentative return was filed on March 15, 1919. On this tax return the tax was estimated to be $12,150,000. On September 15, 1919, the petitioner filed its completed return showing tax due of $11,105,970.90. The Commissioner, however, assessed on November 10, 1919, the amount estimated on the tentative return. During 1919 the petitioner paid the amount of tax shown to be due by the original completed return and on October 27, 1925, the taxpayer, under threat of distraint, paid the amount of $1,044,024.10, which was the unpaid portion of the estimated tax shown on the tentative return. No claim in abatement was ever filed by the petitioner for this amount. The petitioner takes the position that the amount paid on October 27, 1925, was an overpayment upon the ground that it was paid after the expiration of the statutory period of limitations. Regardless of whether such a payment might be held to be an overpayment and regardless of whether or not we would have jurisdiction to determine the question of overpayments when we are considering merely the statute of limitations, under previous decisions this payment in any event was timely made. The five-year period of limitations for 1918 began to run on September 15, 1919, the date of the filing of the completed return, and without any consents in writing would have expired September 15, 1924. The consent in writing filed August 15, 1924, extended for one year the statutory period for determination, assessment and collection. While this consent in writing was still in force and on August 10, 1925, a consent in writing was filed extending the period for assessment until December 31, 1925. Under our previous decisions, a consent for assessment has been held valid for collection of taxes assessed prior to the execution of such consent. *Friend M. Aiken,* 10 B. T. A. 553; affd., 35 Fed. (2d) 620; see also *Roy & Titcomb, Inc.* v. *United States* (Ct. Cls.), 39 Fed. (2d) 753; *Sabin* v. *United States,* 44 Fed. (2d) 70; *Solomon* v. *Heiner,* 43 Fed. (2d) 592; *Washington Coal & Coke Co.* v. *Heiner,* 42 Fed. (2d) 681; *Sugar Run Coal Mining Co.,* 11 B. T. A. 587; *Sacks & Co.,* 20 B. T. A. 1151. And this principle has now been established by the United States Supreme Court (Jan. 5, 1931) in the case of *Stange* v. *United States, supra.* Under the above decisions the consents in writing extended the time until December 31, 1925, for collecting the 1918 tax. As the collection was made within that time, it was timely under the above decisions. This is true regardless of the effect of the sending of the 60-day notice of deficiency on July 2, 1924, and the effect of the extension for 60 days of that notice.

The petitioner having waived the issue as to whether the Commissioner has the right to assess for 1919 an additional tax over

that previously assessed in 1923 for 1919, we are brought to the next issue, as to the statute of limitations which relates to the right of the Commissioner to collect the amount of $350,587.38 for 1919 which was assessed in 1923. This amount represents the unpaid portion of an additional assessment made in 1923 for 1919. We disregard the fact that on March 15, 1920, the petitioner filed a tentative return for 1919. See *Florsheim Bros. Dry Goods Co., supra.* On September 15, 1920, the petitioner filed its return for 1919, which started the running of the statute of limitations. Without a consent in writing the period of limitations for 1919 would have expired September 15, 1925. On January 6, 1925, the petitioner filed a consent in writing for the extension of the time for the determination, assessment and collection of the taxes for 1919 " irrespective of any period of limitations." Under such a consent in writing the Commissioner had a reasonable time in which to act. *Cunningham Sheep & Land Co.,* 7 B. T. A. 652; *Greylock Mills,* 9 B. T. A. 1281; affd., 31 Fed. (2d) 655; 280 U. S. 566; *William S. Doig, Inc.,* 13 B. T. A. 256. At the time of the execution and filing of the above mentioned consent in writing there was pending before the Bureau a claim for the abatement of the unpaid portion of the additional 1919 tax assessed on July 25, 1923, and there was also pending the petitioner's protest and brief dated November 11, 1924. Thereafter, on March 9, 1924, June 11, 1925, July 7, 1925, September 15, 1925, February 11, 1926, and October 22, 1926, the petitioner filed with the Bureau other communications relating to the determination of his 1919 tax liability. On December 20, 1926, the notice of deficiency from which this appeal was taken was mailed to the petitioner. In view of the time during which the petitioner was submitting additional data and information and the time during which the Commissioner was considering the tax liability, we do not think that the period up until December 20, 1926, can be said to be an unreasonable length of time within which the Commissioner should have acted. This was a period from January 6, 1925, until December 20, 1926. As late as October 22, 1926, the petitioner filed additional information with the Commissioner relating to this tax liability. While there was no obligation on the part of the petitioner to file an unlimited waiver or consent, he did so, doubtless for the reason that he desired to afford the Commissioner a reasonable time in which to act without the necessity of filing more than one consent in writing, and in our opinion that consent in writing is valid, and the action of the Commissioner in sending the notice of deficiency on December 20, 1926, was within the scope of the time

extended by the consent in writing. The petitioner duly filed its petition with this Board within the time required by law after the mailing of the notice of deficiency. For 1919, therefore, we think that the statute of limitations has not run.

This proceeding will be restored to the calendar for further hearing on the merits with respect to such matters and issues as are not disposed of herein.

Reviewed by the Board.

MURDOCK and BLACK concur in the result only.

———

ARUNDELL, dissenting: I do not agree with so much of the majority opinion as holds that the statute of limitations has run for the year 1918. Petitioner's return which put the statute of limitations in operation was filed September 15, 1919, and the limitation period unless waived expired on September 15, 1924. Waivers of undoubted validity kept the period open until December 31, 1925. On October 22, 1925, the petitioner executed a waiver extending the time to December 31, 1926. This waiver was forwarded to the Commissioner on November 30, 1925, and was signed by him on February 26, 1930. On December 20, 1926, the Commissioner mailed the notice of deficiency upon which this proceeding is based.

For a long period both before and after the waiver in question was given the petitioner and the Commissioner had carried on negotiations, had held conferences, and had written letters back and forth relating to the petitioner's tax liability, involving, as it did, millions of dollars. The findings of fact disclose letters from the Commissioner under dates of September 17, 1924, April 17, August 26, October 3, and December 18, all in the year 1925; and letters from the taxpayer to the Commissioner under dates of February 11 and October 22, 1926. Conferences were held between representatives of the parties during the year 1926 as well as during earlier years. The waiver itself was on the regular form prescribed by the Commissioner and was of a kind directed by him to be secured pursuant to his instructions to Collectors under date of September 1, 1925. That the petitioner intended to waive the statute of limitations can not be gainsaid. That the waiver induced the delay that followed is clear. That the petitioner received every substantial right that it sought to obtain when it gave the waiver is beyond question. But the waiver itself was not signed by the Commissioner before the statute had run and the majority view is that this failure on the part of the Commissioner to sign before the statutory period has run serves to destroy its effectiveness as a waiver.

The direct question involved here has not been decided by the courts, but the nature of waivers has been recently discussed by the Supreme Court in the following cases: *Stange* v. *United States*, 282 U. S. 270; *Aiken* v. *Burnet*, 282 U. S. 277; *Burnet* v. *Chicago Railway Equipment Co.*, 282 U. S. 295; *W. P. Brown & Sons Lumber Co.* v. *Burnet*, 282 U. S. 283; all decided on January 5, 1931, and *Florsheim Bros. Dry Goods Co.* v. *United States*, 280 U. S. 453, decided on February 24, 1930. In the *Stange* case they say:

* * * a waiver is not a contract, and the provision requiring the Commissioner's signature was inserted for purely administrative purposes and not to convert into a contract what is essentially a voluntary, unilateral waiver of a defense by the taxpayer.

*Aiken* v. *Burnet:*

Even after the Act of 1921, a so-called waiver was not a contract. The requirement in Section 250 (d) of that Act that the Commissioner sign the consent was inserted to meet exigencies of administration, and not as a grant of authority to contract waivers.

*Burnet* v. *Chicago Railway Equipment Co.:*

As we said in *Stange* v. *United States,* * * * the Commissioner's signature was required purely for administrative purposes.

*Florsheim Bros. Dry Goods Co.* v. *United States*, 280 U. S. 453:

If a reason must be found [for requiring the Commissioner's consent] it exists in the general desirability of the requirement as an administrative matter. It serves to keep the Commissioner in closer touch with the matters which he is charged to administer. It avoids claims of improvident execution of waivers and unauthorized exactions by subordinates of the Department for the purpose of curing their own delinquencies. And it provides a formal procedure which is generally desirable for the Commissioner, collectors, and subordinates in the Department. That other means might have been devised for the same purpose is of no significance.

These cases in my opinion definitely negative the idea that the Commissioner's signature is a necessary prerequisite to the validity of waivers. If as said in the *Stange* case a waiver is " essentially a voluntary, unilateral waiver of a defense by the taxpayer," obviously the Commissioner's signature can add nothing to the act performed by the taxpayer in waiving the statute. That this is so is clear from the Court's resort to the analogy of limitations provisions in the case of private debts. No reason is apparent for the adoption of a different rule in tax cases. When the taxpayer signs and returns to the Commissioner a waiver on a form prepared by the Commissioner there is a complete consent in writing. The Supreme Court evidently so regarded the waiver in holding as it did that the Commissioner's signature was required " purely for administrative purposes."

In view of the fact that the Commissioner's signature is required only for administrative purposes, his failure is not a matter that can

be attacked by the taxpayer in a proceeding involving the validity of the waiver. If both parties can extend the statute after it has run, it is difficult to see why the taxpayer can not do his part before it runs and the Commissioner complete his administrative duties afterward. There is nothing in the statute that requires the Commissioner's signature to be attached within the effective period of the waiver.

In *Magee* v. *United States*, 282 U. S. 432, the taxpayer argued against the validity of an abatement claim that he had filed. The Court said: "The taxpayer benefited by the claim and is not in a position to contest its legality." I think the same rule should apply here, in view of the clear showing that the taxpayer obtained, through the execution and filing of the waiver, the benefit of delay in collection and the further consideration of its case.

MARQUETTE and SEAWELL agree with this dissent.