## BLYTHE v. DOHENY et al.
### No. 7444.

Circuit Court of Appeals, Ninth Circuit.
Nov. 26, 1934.

L. Frank Ottofy, of Los Angeles, Cal., for appellant.

Homer D. Crotty, Bruce Wallace, David P. Evans, and Gibson, Dunn & Crutcher, all of Los Angeles, Cal., for appellee Pan American Western Co.

Olin Wellborn, Jr., and Olin Wellborn, III, both of Los Angeles, Cal., and Frank J. Hogan, of Washington, D. C., for individual appellees.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

The appellant, a citizen of Missouri, brought an action alleging fraud and deceit against the appellees, based upon two sales of

shares of the appellee corporation, which, shares it is alleged 'were void for failure to secure the permit of the commissioner of corporations of California. The prayer was for $19,225 compensatory damages and $25,000 punitive damages. The corporate appellee was organized under the laws of Delaware, and the individual appellees are citizens of California.

By express stipulation of the parties, a jury was waived. The case was submitted on its merits by counsel for the individual appellees. From a judgment in favor of the appellees, the present appeal is being prosecuted.

For a proper understanding of the appellant's situation here, there is necessary a brief chronology of the proceedings below after the case was submitted, on September 9, 1932.

On March 18, 1933, the lower court entered upon its minutes an order setting forth that the court had concluded "that the proof does not sustain the cause of action alleged in the complaint," and that "findings and judgment are accordingly ordered to be entered in favor of the defendants [appellees]."

On March 23, 1933, the appellant filed a request for "special finding of facts," but the record does not show that he at that time proposed any special findings. On the contrary, the record shows only the following statement: "Now comes the plaintiff [appellant] in the above-entitled cause and respectfully requests the Court to make a special finding of facts in the above-entitled cause before entry of judgment herein, in view of the following recital of the Minute Order entered herein on the 18th day of March, 1933, to-wit: 'and the court having fully considered the facts and the law, now concludes that the proof does not sustain the cause of action alleged in the complaint.' "

So far as the record shows, it was not until July 10, 1933, nearly four months after the court had indicated the judgment that it intended to render, that the appellant submitted proposed findings of fact.

On the same day, the appellant filed a "motion for judgment," and on the day following he filed his objection to the appellees' proposed judgment and proposed findings of fact.

On July 13, 1933, the court entered an order adopting the findings of fact and form of judgment presented by the appellees, reciting that such findings and judgment were signed and filed, and noting an exception in favor of the appellant to the refusal of the court to make findings as proposed by the appellant and to make the judgment requested by him.

On September 12, 1933, the appellant filed a motion for a new trial, alleging, inter alia, "newly-discovered evidence." In a supporting affidavit, counsel for the appellant deposed that since the trial of the cause "he has been informed by the Secretary of State of the State of New York that the Pan American Western Petroleum Company [the corporate appellee herein] had no right to maintain an office in the State of New York or to issue certificates of stock in said State without authority from him so to do and that, consequently, the said certificates of stock, evidencing the ownership of the shares, which were delivered to plaintiff and for which he paid are and were at all times void when the said stock was sold to the Petroleum Securities Company and Blair & Company in the State of California."

On September 25, 1933, the court denied the motion for a new trial, to which ruling the appellant duly excepted.

■ There are seventeen assignments of error. One assignment deals with the court's denial of the appellant's motion for a new trial. It is too well established to require citation of authority that such a motion is addressed to the sound discretion of the trial court; and a study of the record convinces us that the court did not abuse such discretion.

Five assignments of error relate to the special findings of fact and to the court's refusal "to make the judgment requested by the plaintiff [appellant]."

■ While we are of the opinion that the findings made by the court are supported by the evidence, we further hold that, because of the state of the record, the appellant is not in position to attack the sufficiency of the evidence to support the findings, or to complain of the court's refusal to enter the judgment requested by him. The appellant may, however, question the sufficiency of the findings to support the judgment. The merits of this latter contention will be considered hereafter.

From the foregoing statement of the case, it is observable that the appellant did not request any special findings of facts until five days after the lower court had announced its intended judgment, and that the appellant did not propose any findings of his own until nearly four months after such announcement by the court. Similarly, the appellant did not file a motion for judgment until four

months after the court had indicated the judgment that it would enter.

All the requests and motions referred to in the foregoing paragraph came too late. In Continental Nat. Bank v. National City Bank, 69 F.(2d) 312, 317, 318, this court said:

"Appellant also assigns as error the refusal of its request for a declaration of law that, on the stipulated facts admitted in evidence, plaintiff, because of its failure to comply with the terms of the letter of credit, was not entitled to recover. Unless the request was made and its refusal excepted to 'in the progress of the trial,' as required by the statute we cannot consider the alleged error. [Cases cited.] It is settled that they come too late if made after judgment, even though the trial judge after judgment granted leave to make the request. [Cases cited.] In the instant case, while made after the entry of the trial judge's opinion with the order that 'judgment be for plaintiff,' they were made before the rendition on September 5th and the entry on September 6th of the judgment itself. The order of August 10th, we are satisfied, was neither intended nor regarded as the rendition of a judgment. It was the announcement by the trial judge that he had concluded to direct a judgment in favor of the plaintiff; the ordering part was 'for a judgment' which he would thereafter direct as distinguished from a present judgment. [Cases cited.]

"Nevertheless, the question remains whether or not rulings made and exceptions thereto taken, not merely after submission of the case, but even after the announcement by the court of its opinion and intended judgment, but before rendition of the final judgment, are made and taken 'in the progress of the trial.' In the opinion in Edwards v. Robinson [(C. C. A. 9) 8 F.(2d) 726], supra, an examination of the record discloses what is not entirely clear from the opinion, that there, as here, the declarations of law were requested some time after the judge had filed his opinion which concluded with the words 'the complaint will be dismissed'—but also some time before the trial judge signed and filed the actual judgment of dismissal and his own findings. This court there said that no motion or request for a finding in favor of plaintiff was made 'until long after the close of the trial, and not until 10 days after a decision in favor of the defendants had been announced by the court. Under such circumstances, we are without jurisdiction to consider the sufficiency of the testimony to support the findings.' There are also expressions of opinion in other cases that, for these purposes, the progress of the trial is concluded when the cause is submitted to the judge, or at least when he announces his decision. [Cases cited.] This interpretation accords with the function of the request for ruling and exception to the denial thereof; it is to direct the judge's attention to the specific proposition of law relied upon, so that prior to the announcement of his conclusions he may have the opportunity to consider it. True it is that after entry, and until the end of the term during which the judgment has been entered, it may be set aside and a new trial granted, or, if tried without jury, a contrary judgment entered. That, however, is a matter entirely within the court's discretion, and offers no guide to the scope of the general rule. We conclude that there were no rulings 'in the progress of the trial,' properly before us for review, other than that on the evidence hereinabove considered.

"The sufficiency of the special findings to sustain the judgment is reviewable without an exception whether they were made before or after judgment. [Cases cited.]"

In this appeal, therefore, we are limited to a consideration only of the facts found by the court below.

Succinctly stated, the findings of fact filed by the court were as follows:

The corporate appellee, hereinafter referred to as "the corporation," was formed on May 8, 1925, and was dissolved by the secretary of state of Delaware on September 24, 1929. Meetings of the board of directors and two meetings of the stockholders of the corporation were held in Los Angeles, Cal., but at no time prior to June 18, 1928, was the corporation doing business in California, and at no time did it maintain its principal office in the latter state.

The corporation was not organized for the purpose of having conveyed to it any property in California, or for the purpose of evading the laws of that state.

The appellees Doheny, Anderson, Smith, and Ritter were directors of the corporation from May 8, 1925, to June 18, 1928, and the appellee Sands was a director from September 19, 1925, to June 18, 1928.

The articles of incorporation provided that the stock should be divided into "class A" and "class B." Both classes should confer the same rights and privileges and be subject to the same limitations, except that the holders of class B stock should have no voting power.

The appellee Doheny was president of the corporation, and the appellee Ritter was its treasurer for the duration of their respective directorships.

At a meeting of its directors, held in Los Angeles on July 28, 1925, the corporation authorized the issuance of certain shares of its class B capital stock, including the shares purchased by the appellant and enumerated in his complaint. The corporation, however, did not authorize any of such shares, including the appellant's, to be issued, and they were not issued or sold, in California. The appellant did not purchase from the individual appellees any of the corporation's capital stock, and did not pay them any money for the stock that he purchased.

On September 8, 1925, in St. Louis, Mo., the appellant placed an order with a firm of brokers of that city, to subscribe for 100 shares of class B stock of the corporation, at $23.50 a share, and paid the brokers therefor the sum of $2,350. The appellant, however, did not receive a stock certificate for the 100 shares until August 17, 1928. The stock certificate obtained by the appellant was issued in New York, and was executed by the vice president and the assistant secretary of the corporation, was registered by a bank of New York City, and was countersigned by a trust company, also of New York.

On July 23, 1928, in St. Louis, the appellant placed an order with another firm of St. Louis brokers, to buy for him 1,000 shares of class B stock, which was at that time quoted on the New York Stock Exchange, was known by the appellant to be so traded in and quoted, and was by him intended to be bought on the open market. The brokers bought the 1,000 shares for the appellant, and, on or about July 27, 1928, the latter paid them $16,875 therefor and received from them, in St. Louis, certificates evidencing such shares. The 1,000 shares were executed, registered, and countersigned in the same manner as the 100 shares theretofore issued to the appellant.

At the time that the shares were purchased by the appellant the corporation had not complied with any of the provisions of the Corporate Securities Act of California (St. Cal. 1917, p. 673, as amended). The corporation, however, was not required by any of its acts, or by the provisions of that statute, to comply therewith or to secure a permit thereunder, and the class B stock was not issued in violation of the Securities Act, nor were the 1,100 shares purchased by the appellant void or worthless.

None of the individual appellees, either as officers or agents of the corporation, or as individuals, in any way authorized, directed, or aided in the issuance or sale of any of the shares bought by the appellant.

They at all times knew that the corporation commissioner of California had not issued any permit for the issuance of the corporation's capital stock shares, while, at the time he purchased the shares and received his stock certificates, the appellant did not have this knowledge, and did not acquire it until August, 1930.

The appellees did not act in collusion or conspiracy to cheat, defraud, or deceive the appellant, or to cause any shares of stock to be issued in violation of the California Corporate Securities Act, and the shares were not so issued. The 1,100 shares purchased by the appellant were executed at New York, but not at the direction of any of the appellees.

The appellees did not perform any void or illegal acts; the appellant was not caused to lose any money by any void or illegal acts of any of the appellees; the appellant has not been damaged in the sum of $19,225 or at all; and it is not true that there was no consideration for the payment of such sum by the appellant for the shares of stock, or that no rights whatever were transferred to the appellant by the purchase of such shares.

The first assignment of error deals with the court's refusal to admit evidence offered by the appellant from the minute books of the appellee corporation to the effect that at a board of directors' meeting, held March 17, 1926, reference was made to $15,000,000 of first mortgage bonds of the Pan American Petroleum Company, which evidence, according to the assignment, showed that the appellees "thereby dissipated the value of defendant corporation's assets." It is difficult to see the relevancy of such evidence in connection with a suit based upon the issuing of stock without a permit, and we hold that the court below properly excluded it.

The next ten assignments complain of the court's refusal to admit in evidence against the individual appellees entries in minute books of the corporate appellee, recording various proceedings, most of which were held at gatherings that are characterized as "directors' meetings," and all of which occurred after June 18, 1928, on which date, as we have seen, the court found that the individual appellees had ceased to be directors of the corporation. We do not believe that

the exclusion of this evidence, as against the individual appellees, was improper.

We advance, finally, to the principal question of law presented by the record: Do the facts found by the court support the judgment?

It will be recalled that the court found that, at a meeting of the board of directors, held in Los Angeles, on July 28, 1925, the corporation authorized the issuance of certain shares of class B capital stock, including the shares purchased by the appellant, but that it did not authorize that such shares be issued, nor were they issued or sold, to the appellant or to any one else, in California. It is also to be observed that there was no authorization that the stock be issued to any particular individual, in California or anywhere else.

The precise point for us here to determine is whether or not such general authorization that stock should issue, without more, constituted a violation of the Corporate Securities Act of California, and thus rendered void the shares purchased by the appellant.

At the outset, it may be conceded that the issuance of a security without a permit is included within the prohibition of the Corporate Securities Act of California, the pertinent provision of which had not been amended at the time of the transactions that we are here considering. St. Cal. 1917, c. 532, p. 679, § 12. To the same effect are the decisions of the courts of the State. Tatterson v. Kehrlein, 88 Cal. App. 34, 47, 263 P. 285; 6 Cal. Jur. 781, § 184.

It therefore becomes necessary to inquire as to what constitutes an "issuance" of a corporate security.

Quoting with approval from 5 Fletcher Cyclopedia Corporations, p. 5740, § 3478, this court has held that, to effectuate an issue of stock, a certificate is not necessary. Los Angeles Fisheries v. Crook (C. C. A.) 47 F. (2d) 1031, 1035. See also, Mitchell v. Beckman, 64 Cal. 117, 121, 28 P. 110; California S. H. Co. v. Callender, 94 Cal. 120, 127, 29 P. 859, 28 Am. St. Rep. 99; San Joaquin L. & W. Co. v. Beecher, 101 Cal. 70, 79, 35 P. 349; San Francisco, etc., Agency v. Miller, 4 Cal. App. 291, 293, 87 P. 630; 1 Machen on Modern Law of Corporations, §§ 164 and 171, pages 149 and 153, 154.

It is, however, necessary that there be an issuance to some specific shareholder. A mere blanket authorization, passed by the board of directors, to the effect that there shall be an issuance of stock, without more, does not meet either the legal or the popular definition of "issuance."

In American Pig Iron Storage v. State Bd. of Assessors, 56 N. J. Law, 389, 29 A. 160, 161, the Supreme Court of New Jersey said: "'To issue,' as defined by lexicographers, signifies to send out; to put in circulation. In a popular sense, a corporation engaged in organization is said to issue stock when it obtains subscriptions for it; and, in the construction of tax laws, words are to be interpreted in their popular sense."

In Scott v. Abbott (C. C. A. 8) 160 F. 573, 577, certiorari denied 212 U. S. 571, 29 S. Ct. 682, 53 L. Ed. 655, the court said: "The word 'issue' here employed is obviously used in its ordinary commercial or financial sense, meaning 'to emit,' 'put into circulation,' or 'dispose of securities' already authorized and prepared for disposition. [Authorities cited.]"

And in Marshall on Private Corporations, § 209, p. 528, we find the statement: "By the 'issue of stock,' as the expression is here used, is meant the act or contract of the corporation by which shares of its capital stock are vested in persons as stockholders or members, and not merely the issue of certificates of stock, which, as we have seen, are not the stock itself, but merely the evidence of the ownership of stock, and the rights of the owners as a stockholder."

See, also, 5 Fletcher op. cit., § 3478, p. 5740; 2 Clark and Marshall on Private Corporations, § 382, p. 1177; 5 Thompson on Corporations (3d Ed.) § 3510, p. 350.

Furthermore, it is to be borne in mind that the court below found that none of the shares of stock authorized to be issued by the board of directors, "were authorized to be issued or were issued or sold in" California, to the appellant or to any one else.

The authorization that we have just considered is the nearest approach to any issuance of stock made by the corporation in California, as disclosed by the findings of fact made by the court. And, as we have seen, in the present discussion we are limited to the facts found by the court.

Accordingly, we hold that the findings of fact support the judgment, which is therefore affirmed.